**Pleasant Valley Sch. Dist. v. Schaeffer**

508

C.P. of Monroe County, no. 5550 CV 2010.

*Gerald J. Geiger,* for petitioner.
*Jeffrey Husisian,* for respondent.

ZULICK, *J.,* September 30, 2010—This matter is before the court on the petition of Pleasant Valley School District (PVSD) to review an arbitrator's award pursuant to the grievance procedure contained in a collective bargaining agreement (CBA) between the school and the Pleasant Valley Education Association (PVEA). Respondent Robert Schaeffer (Schaeffer) filed a timely answer to PVSD's petition. Briefs have been filed and argument was held on September 7, 2010.

The jurisdiction of the court to hear this matter is based upon the provisions of Title 42 Pennsylvania Statutes § 933(b), which provides as follows:

Except as otherwise prescribed by any general rule adopted pursuant to section 503, each court of common pleas shall have jurisdiction of petitions for review of an award of arbitrators appointed in conformity with statute to arbitrate a dispute between a government agency, except a Commonwealth agency, and an employee of such agency. The application shall be deemed an appeal from a government agency for the purposes of section 762(4) (relating to appeals from courts of common pleas) and Chapter 55 (relating to limitation of time.) 42 Pa.C.S.A. § 933(b).

PVSD is a "government agency" within the definition of the judicial code and not a "Commonwealth agency" so as to be excluded from the provisions of §933(b).

## BACKGROUND

The following facts were established at arbitration. Robert Schaeffer was employed by Pleasant Valley School District as a special education teacher. In November 2005, PVSD administration became aware of criminal misconduct alleged to have been committed by Mr. Schaeffer while working as a teacher in Carbon County, Pennsylvania. The allegations were published in a local newspaper and were said to have occurred while Schaeffer was an employee of Lehighton Area School District (LASD) before his position with PVSD. As a result of the allegations, PVSD suspended Schaeffer on November 18, 2005. *Award, page 3.*

In December of 2005, criminal charges were filed against Schaeffer in Carbon County. PVSD sent Schaeffer a letter dated December 22, 2005, informing him that it was suspending his employment indefinitely until he provided PVSD with written documentation of the exoneration of his charges. At the preliminary hearing, the charges were bound over for trial. *Award, page 3.*

The Carbon County District Attorney's office allowed Schaeffer to enter the Accelerated Rehabilitative Disposition (ARD) program on May 4, 2006. *Award, page 3.* He completed ARD on June 7, 2007, at which time all charges against him were dismissed. On June 22, 2007, Schaeffer wrote a letter to Dr. Pullo, then PVSD Superintendent, requesting immediate reinstatement. Dr. Arnold, who replaced Pullo as Superintendent after Pullo retired, replied by letter, dated July 3, 2007, indicating that PVSD would not allow Schaeffer to return to his job until a separate investigation was conducted by the Pennsylvania Department of Education (PDE). *Award, page 4.*

Schaeffer signed a settlement agreement with PDE in which his Pennsylvania teaching certification was retroactively suspended from November 21, 2005 through June 30, 2008. The agreement was subject to approval by PDE's Professional Standards and Practices Commission, and became effective on July 31, 2008. *Award, page 5.*

Between the time of PDE's acceptance of the settlement on July 31, 2008, and November 23, 2008, Schaeffer did not request reinstatement with PVSD. He claimed he did not do so because he felt that he needed documentation that his record was clear. He was concerned that the PDE website, which publicizes the status of teaching licenses of individuals holding licenses under the department, showed that he was still suspended. The website indicated as late as October 2008 that Schaeffer's license was still suspended and that he was subject to "allegations of inappropriate behavior with students." The website also inaccurately stated that Schaeffer's last employment was with LASD and not PVSD. References to Schaeffer's suspension were taken off the website in December of 2008. *Award, page 5.*

In a November 24, 2008, letter Schaeffer informed PVSD of the resolution of the criminal charges and reinstatement of his license. He also requested his job back. PVSD notes, however, that Schaeffer never responded to Dr. Arnold's July 3, 2007 letter. PVSD also received at least two reference checks on Schaeffer from other employers. As a result, PVSD concluded Schaeffer had abandoned the position and refused to accommodate his request for reinstatement. *Opinion and award, page 5.*

The arbitrator sustained Schaeffer's grievance in an opinion dated May 13, 2010. He held that Schaeffer

could not have abandoned his employment since he was previously suspended and there was no evidence that the suspension had been lifted. The arbitrator ordered that Schaeffer be reinstated to his position and that he receive back pay and benefit credit dating from the date of his request for reinstatement, November 24, 2008, less any earnings he received from other employment after that date. *Award, page 12-13.*

## DISCUSSION

### (1) *Timeliness of Appeal*

As a threshold matter, we address the timeliness of PVSD's appeal, an affirmative defense raised by Schaeffer in his answer. *Answer, page 17.* PVSD filed this proceeding under Pennsylvania's Uniform Arbitration Act. See Pa.C.S.A. § 7301. Section 7314(b) of the Act provides: "An application under this section shall be made within 30 days after delivery of a copy of the award to the applicant...."

PVSD filed its petition on June 17, 2010. Schaeffer claims PVSD's appeal was taken 31 days after delivery of the award, which he argues occurred May 17, 2010, and that the court must therefore dismiss the petition. In support, Schaeffer's counsel has submitted an affidavit which states that counsel's secretary e-mailed a copy of the opinion and award to PVSD's counsel at approximately 3:30 p.m. on May 17, 2010. *Husisian affidavit,* ¶7. Schaeffer's counsel also concedes, however, that he was the only attorney that received the opinion and award from American Arbitration Association (AAA) Case Manager Richard V. Biggs as of May 13, 2010. Counsel for PVSD, Gerald Geiger, filed an affidavit in which he stated that as of August 25, 2010, he had not received a copy of the arbitrator's opinion and

award from AAA. *Geiger affidavit,* ¶10. He also filed an e-mail letter originally sent to AAA dated May 19, 2010, in which he informed it that he had not been provided a copy of the opinion and award and noted that he only learned of the award after it was provided to his office by Schaeffer's attorney. *See PVSD's brief, exhibit "A."* Co-counsel for PVSD, Daniel Corveleyn, likewise submitted an affidavit dated September 1, 2010, in which he stated that as of that date he had not received a copy of the opinion and award from the AAA. *Corveleyn affidavit,* ¶4.

Schaeffer's counsel's secretary e-mailed a copy of the opinion and award to PVSD's counsel on May 17, 2010. PVSD filed its petition on June 17, 2010, 31 days after "receiving" the copy of the opinion and award. PVSD's compliance with the filing rule set out in our Uniform Arbitration Act, therefore, turns on whether the e-mail sent to PVSD's counsel by the secretary constitutes "delivery" under the statute. Schaeffer cites two cases which, respectively, require PVSD to have "received" or been given "notice" of the award. See *Caron v. Reliance Ins. Co.,* 703 A.2d 63, 65 (Pa. Super. 1998) (stating that a party has thirty days from "receipt" of the award); *Kimmins v. School Dist. of Philadelphia,* 1994 WL 1251141, 27 Phila. Co.Rptr. 502, 506 (Philadelphia C.P.1994), (measuring thirty days from date the party receives "notice" of the award).

Whether "delivery," "receipt," or "notice" is required, no appellate authority has been cited to allow for any of these methods to be accomplished by a party instead of by the arbitrating body or court system. The better interpretation of the term "delivery" in the phrase "after delivery of a copy of the award to the applicant" found in the statute is delivery by the arbitrator. To allow the parties to take over

administration of the dispute resolution process would create uncertainty if not prejudice and gamesmanship. For these reasons, we conclude that PVSD's appeal was timely filed.

## (2) *The Essence Test*

An arbitrator's award under the Public Employee Relations Act (PERA) is entitled to review under the essence test. See *Westmoreland Intermediate Unit # 7 v. Westmoreland Unit # 7 Classroom Assistants Educ. Support Pers. Ass'n, PSEA/NEA*, 595 Pa. 648, 939 A.2d 855 (Pa. 2007). Under this highly deferential standard, the reviewing court must perform two steps of analysis in deciding whether an arbitrator's award draws its "essence" from the CBA. *Id.* at 862. First, it must decide whether the disputed issue is properly defined within the terms of the CBA. *Id.* at 863. For this purpose, the School Code is incorporated into the CBA by operation of law. See *Mifflinburg Educ. Assoc. v. Mifflinburg Area Sch. Dist.*, 555 Pa. 326, 334, 724 A.2d 339, 343-44 n.5 (Pa. 1999). Second, the court must determine if "the [arbitrator's] interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention....'" *Westmoreland*, 939 A.2d at 862 (quoting *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d. Cir. 1969)). In performing this review, the court may not make its own factual findings, evaluate the merits, or assess the reasonableness of an award. *Westmoreland*, 939 A.2d at 863. The court may not inquire even as to whether an award is manifestly unreasonable. *Id.* at 863 (citing *Pennsylvania Game Commission v. Civil Service Commission (Toth)*, 747 A.2d 887 (Pa. Supreme Ct. 2000)). If an award satisfies both steps of analysis under the essence test, it may not be disturbed unless upholding

the award would violate public policy. *Westmoreland*, 939 A.2d at 863-64.

(A) *The Dispute is Defined Within the Terms of the CBA*

In accordance with the essence test, we must first verify that the dispute is defined within the terms of the CBA. This point is not in contention. See *PVSD's brief, page 6* ("In the instant matter, the District concedes the first prong of the essence test was satisfied"). At arbitration, the parties stipulated to the following statement of the issues:

Did the Pleasant Valley School District reach [sic] the collective bargaining agreement and/or the Pennsylvania School Code by refusing to allow the grievant, Robert Schaeffer, to return to work on November 24, 2008? If so, what shall the remedy be? Alternatively, did Robert Schaeffer "abandon" his employment as that term is defined under the law? If not, what shall the remedy be? *Award, page 6.*

As stated in the stipulated issues, the crux of the parties' dispute is whether PVSD's refusal to reinstate Schaeffer without a due process hearing was in compliance with the CBA. It follows that determining compliance with the CBA is necessarily defined within the terms of the CBA itself.

The CBA provides a due process hearing to tenured and non-tenured employees alike. *See, e.g., Answer, Exhibit B, Appendix B, page 19* (termination procedure of CBA). Additionally, through the incorporated School Code, the CBA requires notice and a public hearing before a tenured employee may be terminated. 24 P.S. §§ 11-1126, 1127. Because a termination hearing is provided for by the CBA

and School Code and is expressly required for an act of termination by PVSD, we conclude that this issue (the denial of a hearing) is within the terms of the CBA.

The issue of "abandonment" is also impliedly within the terms of the CBA. Our case law has established that when a teacher has abandoned his position he waives his rights under the School Code. See *West Shore Sch. Dist. v. Bowman*, 409 A.2d 474, 480 (Pa. Comm. 1979); *Jacobs v. School District of Wilkes-Barre*, 50 A.2d 354, 356 (Pa. Super. 1947). The effect of these decisions is to add an implied exception to the CBA: in order to terminate Schaeffer, PVSD must have provided a due process hearing *unless the arbitrator finds he abandoned his employment*. Since PVSD did not provide Schaeffer with a due process hearing, the only way PVSD can be found not to have violated the CBA is if Schaeffer is determined to have abandoned his employment. Resolution of whether Schaeffer abandoned his post, therefore, is an issue within the terms of the document.

(B) *The Arbitrator's Interpretation Can be Rationally Derived from the CBA*

Under the second step of the essence test, we must determine whether the arbitrator's interpretation can be rationally derived from the CBA. *Westmoreland*, 939 A.2d at 862. In finding for Schaeffer, the arbitrator's interpretation of the CBA can be traced to his framing of its termination provision:

> The grievant as a tenured teacher may be severed from a position by one of two methods. The District may remove him from his position in which case, the grievant would be entitled to the due process procedures

as set forth in the School Code. The grievant could also abandon his position by in essence affirmatively indicating that he was no longer interested in a position that was otherwise open for him. *Award, page 10*.

According to the arbitrator, the only two ways Schaeffer's employment could have ended were: 1) he was terminated by PVSD without a hearing in violation of the CBA; or 2) he was terminated by PVSD without a hearing because he abandoned his position not in violation of the CBA. *Award, page 10.*

(a) *Direct Breach*

In his analysis, the arbitrator did not discuss the direct breach of the CBA beyond noting that removal by PVSD would require the due process procedures provided in the school code. *Award, page 10.* The parties acknowledged that PVSD had not provided a due process hearing to Schaeffer. The plain language of the CBA requires that "Discharged tenured employees will be afforded all rights and privileges of the School Code." *Answer, Exhibit B, Appendix B, paragraph 17, page 19.* The School Code, in turn, requires that before a tenured professional employee is dismissed, he is entitled to notice of the charges against him and a public hearing before the board of school directors. 24 P.S. §§ 11-1126, 1127. The School Code is incorporated into the CBA by operation of law. See *Mifflinburg Educ. Assoc. v. Mifflinburg Area Sch. Dist.,* 724 A.2d 339, 343-344 n.5 (1999). Schaeffer, as a tenured teacher, was entitled to the hearing allowed him by the School Code as incorporated by the CBA but was not given one. Unless Schaeffer abandoned his position, therefore, he was denied his rights in violation of the CBA.

PVSD contends that the arbitrator's failure to discuss

this provision of the CBA is fatal to the award, arguing that the arbitrator could not have rationally derived his interpretation from the essence of the CBA where he neglected to expressly mention the CBA in his analysis. *PVSD's brief,* page 7. I disagree. Given that the CBA required a hearing, that PVSD did not provide one, and that PVSD was in breach of the CBA unless Schaeffer had abandoned his position, it was eminently rational of the arbitrator to briefly discuss the lack of the due process hearing required by the CBA and turn to the issue of abandonment for resolution of the case. The arbitrator's analysis was streamlined, but his decision to omit discussion of direct breach and address only the issue of abandonment was not "indisputably and genuinely...without foundation in, or fails to logically flow from, the collective bargaining agreement." *Westmoreland,* 939 A.2d at 863. Indeed, we can deduce this *because* the arbitrator's conclusion flows logically from his interpretation.

(b) *Abandonment*

The arbitrator's analysis of the abandonment issue itself is sound. Much of the confusion related to the issue of abandonment appears to stem from the fact that abandonment is not expressly considered within the terms of the CBA. See *Answer, Exhibit B, Appendix B, page 19.* Nor is it incorporated as a basis for termination through the School Code. See 24 P.S. § 11-1121 (providing for termination by employee resignation or school board action in compliance with due process); *West Shore School District,* 409 A.2d at 478. Instead, our Supreme Court has grafted abandonment on to the two statutory bases as a third method of termination. The practical effect of this additional common law basis is that an arbitrator would be unable to look to the CBA or School Code for direct

518

guidance or support.

PVSD indicates this possibility in its brief. *PVSD's brief, page 7*. It argues that at such an impasse the arbitrator must look to the context of the relevant provision of the CBA and determine the parties' intent. PVSD notes that the arbitrator did not make this effort. Its proposed solution, however, appears no more helpful in this case than the text of the CBA itself. Implied in our Supreme Court's instruction to view the CBA "in light of its language, its context, and any other indicia of the parties' intention" is that some or all of these criteria may not be available or even helpful to analysis. Such is the case here. The context and placement of Appendix B, Paragraph 17, Page 19 of the CBA offers no indication of the parties' intent. Notably, PVSD does not suggest how the arbitrator might have performed a successful analysis of context and intent. Instead, the possibility of abandonment appears never to have been contemplated by the parties, either in text or context.

In *Jacobs v. Wilkes-Barre Township School District*, 355 Pa. 449, 50 A.2d 354 (1997), our Supreme Court grouped abandonment with modification and substitution in characterizing all of these actions as "alterations" of contract. Abandonment, like these other events, occurs after contract formation. It may not always be contemplated at the time of contracting and consequently:

It is always competent for the parties to a written contract to show that it was subsequently abandoned in whole or in part, modified, changed, or a new one substituted. And this *may be shown by*...by showing either an express agreement or actions necessarily involving the alterations.*Id.* (quoting *Achenbach v.*

*Stoddard*, 98 A. 604, 605 (1916); *Mazer v. Kann*, 22 A.2d 707, 708 (1941)) (emphasis added).

In finding facts related to "actions necessarily involving the alterations," the arbitrator was acting as our Supreme Court has advised him in assessing abandonment. The arbitrator found that Dr. Arnold's July 3, 2007 letter extended the suspension imposed by Dr. Pullo in 2005. The arbitrator reasoned that because Mr. Schaeffer was still suspended from his employment with PVSD, which was awaiting the results of the PDE investigation before making a final determination, "(a)s far as the grievant was concerned he did not have a job that he could abandon" in July, 2007. *Award, page 11.* These factual findings are the basis of the award, are allowed by Jacobs and are thoroughly supported by the record.

Finally, with regard to both stipulated issues, PVSD contends that the arbitrator "failed to cite to the language of the CBA between the parties. Therefore, the opinion and award cannot be considered to have rationally derived from the CBA." *PVSD's brief, page 5.* It is apparent that the arbitrator did not cite to the CBA in his opinion. The essence test, however, requires the court to look to whether the arbitrator's interpretation takes its spirit — its essence — from the CBA. PVSD directs us to no proposition of law that the essence test also requires an arbitrator to affirmatively cite to the CBA in crafting his opinion. PVSD has thus failed to meet its burden. Accordingly, we hold that the arbitrator's interpretation can be rationally derived from the CBA.

(3) *Public Policy Exception*

PVSD next argues that the court should refuse to reinstate Schaeffer based on the public policy exception

to the essence test. In *Westmoreland*, supra, our Supreme Court affirmed the use of the essence test and determined that it must be subject to a narrow exception for violations of the public policy of the Commonwealth. 939 A.2d at 866. The public policy, however, "must be well-defined, dominant, and ascertained by reference to the laws and legal proceedings and not from general considerations of supposed public interests." *Westmoreland, Id.* The violation of such a policy must be clearly shown in order to refuse enforcing an award. *Id.* at 864 (quoting *United Paperworkers Int'l Union v. Misko*, 484 U.S. 29, 43 (1987). The burden to establish a record indicates that criminal charges were filed against Schaeffer for inappropriate behavior with a student, and these charges were bound over after a preliminary heaing. He accepted an ARD as a means of resolving the criminal case. The penalties Schaeffer accepted in the ARD and the suspension were significant. However, the record is silent as to what he allegedly did to or with the student. Did he use excessive discipline? Did he sexually harass the student? Did he engage in other criminal conduct against the student? These questions were not addressed in the arbitration, and the court, students and students' parents are left wondering what this conduct actually was. This leaves. "an elephant in the room" in this case; what was the basis for Schaeffer's suspension and if it was criminal in nature, why is he returning to teach and supervise special needs students?

This case has some similarities to the facts addressed by the Third Circuit in *Stroehmann Bakeries, Inc. v. Local 776, Intern. Broth. of Teamsters*, 969 F.2d 1436, (C.A.3 (Pa.), 1992). There an arbitrator's decision returned an employee charged with sexual harassment to the workplace without a determination on the merits as to whether he

actually committed sexual harassment:

> Under the circumstances present here, an award which fully reinstates an employee accused of sexual harassment without a determination that the harassment did not occur violates public policy. Therefore, Arbitrator Sands construed the Agreement between the parties in a manner that conflicts with the well-defined and dominant public policy concerning sexual harassment in the workplace and its prevention. His award would allow a person who may have committed sexual harassment to continue in the workplace without a determination of whether sexual harassment occurred. Certainly, it does not discourage sexual harassment. Instead, it undermines the employer's ability to fulfill its obligation to prevent and sanction sexual harassment in the workplace. For these reasons, we conclude that reinstatement of this employee without a determination of the merits of the allegation violates public policy. *Stroehmann Bakeries, Inc. v. Local 776, Intern. Broth. of Teamsters*, 969 F.2d 1436, 1442(C.A.3(Pa.), 1992).

Like the situation in *Stroehmann Bakeries*, allowing a teacher who was charged with misconduct with a student to return to the classroom without a determination of what actually occurred would not discourage such misconduct and would undermine the ability of the school to provide a safe place for special needs students to attend school. No parent of a special needs child would be satisfied with the return of a person who has been suspended for 31 months by the Department of Education to teach their child without knowing what his infraction was, especially when it had to do with "misconduct with a student."

This case will be remanded to the arbitrator for an

additional hearing. PVSD is directed to present evidence of the basis for Schaeffer's suspension by the Department of Education, which shall be reviewed by the arbitrator with the public policy issues discussed above in mind.

## ORDER

And now, September 30, 2010, following consideration of the parties' briefs and arguments, it is ordered as follows:

1. The appeal of Pleasant Valley School District is sustained and the decision of the arbitrator is reversed in part.

2. This matter is remanded to the arbitrator for an additional hearing on the reasons why Robert D. Schaeffer was suspended from teaching, and whether his reinstatement would violate public policy as discussed in *Westmoreland Intermediate Unit # 7 v. Westmoreland Unit # 7 Classroom Assistants Educ. Support Pers. Ass'n, PSEA/NEA*, 595 Pa. 648, 667, 939 A.2d 855, 856 (Pa. 2007) and *Stroehmann Bakeries, Inc. v. Local 776, Intern. Broth. of Teamsters*, 969 F.2d 1436, (C.A.3 Pa.), 1992).