West Shore School District, Petitioner *v.* Roberta Bowman, Respondent. (2 Cases)

Argued September 12, 1979, before Judges Men-
cer, DiSalle and MacPhail, sitting as a panel of
three.

*Thomas A. Beckley,* with him *James P. Cullen,*
and *Buckley & Madden,* for petitioner.

*Catherine C. O'Toole,* for respondent.

OPINION BY JUDGE MACPHAIL, December 19, 1979:

Petitioner West Shore School District (School District or District) brings the instant appeal from an order of the Secretary of Education (Secretary) which sustained the appeal of Respondent Roberta Bowman (Bowman) and ordered the School District to reinstate Bowman to her teaching position, without loss of pay, from the date her physician certifies she was physically able to resume her teaching duties. The School District raises three issues for our consideration: whether Bowman's exclusive remedy was under a collective bargaining agreement rather than pursuant to the Public School Code of 1949 (Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §1-101 *et seq.*, whether Bowman was entitled to a hearing pursuant to the Code, and whether the Secretary lacked jurisdiction to hear Bowman's appeal because it was untimely. For the reasons which follow, we affirm, but modify, the Secretary's order.

The facts of this case are not in dispute. Bowman had been employed as a teacher by the School District since 1964. She was a professional employee as that term is defined in Section 1101(1) of the Code, 24 P.S. §11-1101(1). In June, 1975, on the advice of her physician, she requested that the School District grant her a sabbatical leave for medical reasons for the fall term of the 1975-1976 school year. The District granted the sabbatical and later extended it to include the spring term. Because of continuing medical problems, Bowman was unable to return to her position with the District at the beginning of the 1976-1977 school year. She then used all of her sick leave which was exhausted on November 4, 1976.

On November 3, 1976, Bowman requested a one year leave without pay for medical reasons. The District approved this request pursuant to Section 3.05 of the collective bargaining agreement to which

Bowman and the District were subject. In August, 1977, Bowman informed the District that she would be unable to return to the classroom at the beginning of the 1977-1978 school year, but that she planned to return on November 4, 1977, the expiration date of her unpaid leave. Bowman failed to report for work on November 4, 1977 and, on the same date, the Superintendent of the School District wrote to Bowman informing her that she was "no longer being retained as an employe of the West Shore School District." On November 17, 1977, the School Board confirmed the Superintendent's action.

By letter dated November 23, 1977, Bowman, through her attorney, requested a dismissal hearing by the Board. The District did not respond to Bowman's request. On December 28, 1977, she filed a teacher tenure appeal with the Secretary pursuant to Section 1131 of the Code, 24 P.S. §11-1131. Following a hearing and oral argument, the Secretary entered the order from which this appeal is taken.[1]

We must first determine whether Bowman is properly before us or whether her exclusive remedy lay in arbitration. Section 903 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.903, requires that all disputes or grievances arising out of the interpretation of a collective bargaining agreement be submitted to arbitration. *Shippensburg Area Education Association v. Shippensburg Area School District*, 42 Pa. Com-

---

[1] The School District originally filed a petition for review at No. 1833 C.D. 1978 naming the Secretary and the Department of Education (Department) as respondents. The District later filed a second petition for review at No. 1918 C.D. 1978 naming Bowman as the respondent. The Secretary and the Department were subsequently deleted as party-respondents in No. 1833 and Bowman was added. The petitions for review were then consolidated for the purpose of our consideration.

monwealth Ct. 128, 132, 400 A.2d 1331, 1332 (1979); *Stroudsburg Area Board of Education v. Pennsylvania Labor Relations Board,* 39 Pa. Commonwealth Ct. 200, 202, 395 A.2d 622, 623 (1978). Here, there is no doubt that Bowman and the School District were parties to a collective bargaining agreement. The question before us, then, is whether the dispute between these two parties arguably involves an interpretation or violation of that agreement. *Oxford Board of School Directors v. Pennsylvania Labor Relations Board,* 31 Pa. Commonwealth Ct. 441, 445, 376 A.2d 1012, 1013 (1977). If it does, Bowman has chosen the wrong forum in which to pursue her claim. If it does not, she is properly before us. *Stroudsburg Area Board of Education v. Pennsylvania Labor Relations Board,* 39 Pa. Commonwealth Ct. at 203, 395 A.2d at 623-24.

The School District's argument that Bowman was required to submit her grievance to arbitration is three-pronged: her employment with the School District was terminated following a one year leave of absence without pay; the leave was granted to her pursuant to a provision of the collective bargaining agreement; therefore, "Any complaint which she may have regarding the terms of that leave or the consequences of its expiration arguably involves the 'meaning, interpretation, or application' of a provision of the Collective Bargaining Agreement." District's Consolidated Brief at 18. The fatal flaw in the District's analysis is in relating the leave of absence to the termination of her employment. According to the Superintendent's November 4 letter to Bowman, she was "no longer being retained" *not* because her leave of absence had expired, *but* because the School District had not heard from her since August 29, 1977 and because she did not report for duty on November 4. The termination was unrelated to the

leave of absence provision of the collective bargaining agreement and, accordingly, that provision may not be the basis for invoking mandatory arbitration in this case.

The School District in its brief also cites section 6.00 of the collective bargaining agreement which provides that "The Employer has the right to discipline and/or discharge any employee for any cause permitted under the Pennsylvania Public School Code of 1949, as amended." That section also fails to provide a basis for mandatory arbitration. Had Bowman's appeal to the Secretary been concerned solely with the substantive reasons for her termination, the matter would be arguably arbitrable. *See Rylke v. Portage Area School District*, 473 Pa. 481, 375 A.2d 692 (1977). It was not. Instead, Bowman's appeal was based on the argument that her employment was terminated in violation of certain *procedural* rights guaranteed to her under the Code. Because we are concerned with procedure and because the collective bargaining agreement does not contain provisions relating to termination procedures, this matter is not a proper one for arbitration. As our Supreme Court said in *Milberry v. Board of Education*, 467 Pa. 79, 84, 354 A.2d 559, 562 (1976), "The agreement neither modifies nor creates an alternative to that dismissal procedure; nor does it provide for a review of the dismissal of a tenured teacher." Bowman was not required to submit her termination to arbitration and she did properly appeal to the Secretary.

The remaining issues concerning whether Bowman is entitled to a dismissal hearing before the Board and whether her appeal to the Secretary was timely are closely intertwined. The resolution of both issues rests on a determination of whether she or the Board was responsible for the termination, that is, whether she quit or was discharged.

The School District's argument that Bowman was not discharged but that she voluntarily terminated her employment rests on our Supreme Court's opinion in *Jacobs v. Wilkes-Barre Township School District,* 355 Pa. 449, 50 A.2d 354 (1947) and on several unemployment compensation opinions which, the District argues, are applicable to the facts of this case.

Section 1121 of the Code, 24 P.S. §11-1121, establishes two statutory bases for the termination of a professional employee's contract. A contract may be terminated:

'by the professional employe by written resignation presented sixty (60) days before resignation becomes effective, or by the board of school directors (or board of public education) by official written notice presented to the professional employe: Provided, That the said notice shall designate the cause for the termination and shall state that an opportunity to be heard shall be granted if the said professional employe, within ten (10) days after receipt of the termination notice, presents a written request for such hearing.'

The *Jacobs* opinion established a third method, abandonment and mutual rescission, for termination of a professional employee's contract. In order for acts to culminate in mutual rescission, however, an employee must express a *definite intention* to abandon his or her contract and an employer must perform an act acquiescing in the abandonment. 335 Pa. at 453-54, 50 A.2d at 356.

The facts of *Jacobs* are clearly distinguishable from the facts of the present case. In *Jacobs,* the professional employee left her position on February 25, 1941 "without notice to the board, or permission therefrom." She returned to her position for the 1941-1942 school year. In September, 1942, she re-

quested a sabbatical leave. Although the Board took no action on her request, she did not teach that year. In September, 1943, the Board asked her what her intentions were concerning her job. She never replied to the inquiry. In September, 1944, she returned to her teaching job but found that she had been replaced. Jacobs appealed the termination of her employment alleging that it was invalid because the school board failed to follow the statutory requirements of the Teachers' Tenure Act. In ruling that the Board did not err, the Supreme Court stated:

> Appellant's failure to report for two consecutive years, the failure to avail herself of the rules governing maternity leaves of which she had knowledge, and, more specifically, her refusal or failure to notify Davis or the board of her intention regarding the contract after Davis had contacted her, are facts necessarily leading to the conclusion that she has expressed through her actions, a definite intention to abandon the contract. The action of appellee school board in employing a permanent teacher to replace her, only after a reasonable time had elapsed after they had contacted appellant, was an act of, or acquiescence in, the abandonment. Together, these acts constituted a mutual rescission.

355 Pa. at 453-54, 50 A.2d at 356. The mutual rescission rationale of *Jacobs* is clearly inapplicable to the case before us. Here, Bowman repeatedly sought leaves from her teaching position; the District repeatedly granted such leaves; Bowman kept the School District informed of her intentions and her state of health; and her job was terminated on the first day that she was absent from her position without the District's knowledge and approval. Under these circumstances, we cannot say that Bowman expressed a definite intention to abandon her contract.

In the alternative, the District argues that Bowman voluntarily terminated her job when she failed to appear for work on November 4, 1977 and, therefore, that the District was not required to follow the statutory procedures mandated for the discharge of a professional employee. We find the unemployment compensation cases referred to by the parties in their briefs instructive on the termination issue.

"Absence from work, even for a good cause such as illness may become, through the lapse of an unreasonable amount of time, a voluntary termination." *Unemployment Compensation Board of Review v. Thomas,* 24 Pa. Commonwealth Ct. 136, 139, 354 A.2d 46, 47 (1976). The burden of keeping an employment relationship alive is on the disabled employee. *Crawford Unemployment Compensation Case,* 196 Pa. Superior Ct. 505, 506, 175 A.2d 168, 169 (1961). The question which we must decide is whether Bowman took the precautions to guard her job which a reasonably prudent person would take. *Vernon Unemployment Compensation Case,* 164 Pa. Superior Ct. 131, 135, 63 A.2d 383, 384-85 (1949). We find that Bowman did take such precautions and did bear the burden of keeping her employment relationship with the District alive.

During her two and a half year illness, Bowman exhausted every form of authorized leave available to her. Not until November 4, 1977, was one of her illness days unexcused. She communicated with the District a number of times during that period to report on her medical progress or lack thereof and to indicate when she intended to try to return to teaching. Bowman's only lapse, her only unauthorized absence, was on November 4, 1977. She did not return to school that day nor did she call the District to report her absence. In turn, the Superintendent wrote to her on the same day saying that she would no longer be retained by the District.

We find this situation to be closely analogous to that presented in *Martin v. Unemployment Compensation Board of Review*, 32 Pa. Commonwealth Ct. 270, 378 A.2d 1052 (1977). There, an employee had been absent from work for medical reasons for three months. During that time he had remained in contact with his employer. He failed to contact his employer during the first two days following his discharge from medical care and his employer replaced him. We held there that such a failure without more was not an indication of a decision not to return to work and that in order for an employer to draw such a conclusion under those circumstances the employee would have had to have stated his intentions to terminate his employment. Similarly, here, we find that the District acted in haste and without sufficient reason to believe that Bowman intended to terminate her employment. We hold that her termination was not a voluntary act but that she was discharged.

Having determined that Bowman was discharged by the School District, we must now determine if that discharge was valid. We hold that it was not. A professional employee may be discharged only for those reasons set forth in Section 1122 of the Code, 24 P.S. §11-1122. *New Castle Area School District v. Bair*, 28 Pa. Commonwealth Ct. 240, 242, 368 A.2d 345, 347 (1977). The procedures which a school district must follow in discharging a professional employee are set forth in Section 1127 of the Code, 24 P.S. §11-1127:

> Before any professional employe having attained a status of permanent tenure is dismissed by the board of school directors, such board of school directors shall furnish such professional employe with a detailed written statement of the charges upon which his or her proposed dismissal is based and shall conduct

a hearing. A written notice signed by the president and attested by the secretary of the board of school directors shall be forwarded by registered mail to the professional employe setting forth the time and place when and where such professional employe will be given an opportunity to be heard either in person or by counsel, or both, before the board of school directors and setting forth a detailed statement of the charges. Such hearing shall not be sooner than ten (10) days nor later than fifteen (15) days after such written notice.

We have repeatedly held that no dismissal of a tenured professional employee can be valid unless the dismissing school district acts in full compliance with the Code. *See, e.g., Board of School Directors of the Centennial School District v. Secretary of Education,* 31 Pa. Commonwealth Ct. 307, 376 A.2d 302 (1977); *New Castle Area School District v. Bair,* 28 Pa. Commonwealth Ct. 240, 368 A.2d 345; *Pointek v. Elk Lake School District,* 26 Pa. Commonwealth Ct. 62, 360 A.2d 804 (1976). In the case before us, compliance with the provisions of the Code was not merely defective, it was not even attempted. The only conclusion we can reach on these facts is that Bowman's dismissal was a nullity and that she must be treated as if her employment were never terminated.

The School District further argues that the Secretary lacked jurisdiction to decide this case because Bowman's appeal was untimely. Section 1131 of the Code, 24 P.S. §11-1131, requires that a professional employee aggrieved by the action of a school board must appeal to the Secretary within thirty days after receipt by registered mail of written notice of the Board's decision. The District argues first that since Bowman voluntarily terminated her employment, the

Board took no action so there is no decision from which she can appeal. We have already held that Bowman did not voluntarily terminate her employment but that she was discharged. Therefore, the District's first argument must fail.

In the alternative, the District argues that if it did discharge Bowman the action effectuating the discharge was the November 4, 1977 letter and that since Bowman failed to appeal within 30 days of that date her appeal was untimely. Such an argument ignores the clear wording of the Code. An employee is required to file an appeal with the Secretary within 30 days of receiving written notice by registered mail of the board's decision. In this case, the Board's decision was simply to confirm the Superintendent's action. Even if this decision had been effective in dismissing Bowman, which it was not, notice of the decision was never given to Bowman. On November 23, 1977, Bowman requested that the Board grant her a hearing on her dismissal. The Board never responded to her request. She filed her appeal with the Secretary on December 28, 1977. Given the facts of this case, especially the fact that no event occurred to trigger the appeal time, we do not believe that Bowman waited an unreasonable length of time before appealing. We hold her appeal to be timely and the Secretary's assuming jurisdiction of this case proper.

The only matter remaining for our consideration is the remedy to be afforded Bowman. When a professional employee is discharged by a school board without the required notice of a hearing and opportunity to be heard, the employee is entitled to reinstatement. *McKelvey v. Colonial School District,* 35 Pa. Commonwealth Ct. 264, 385 A.2d 1040 (1978); *McKelvey v. Colonial School District,* 22 Pa. Commonwealth Ct. 207, 348 A.2d 445 (1975). Further-

more, when an employee ultimately prevails on an appeal from a discharge and is ordered reinstated, the employee is also entitled to back salary for the period of the improper discharge. *Goetz v. Norristown Area School District*, 16 Pa. Commonwealth Ct. 389, 391-92, 328 A.2d 579, 581 (1974). Bowman, then, is entitled to be reinstated to her former position with back pay. Given Bowman's health problems, however, the award of back pay must be limited to the period of time during which she would have been physically able to teach. The Secretary's order awarded back pay "from the date [Bowman's] physician certifies she was physically able to resume her teaching duties." We believe that such a determination cannot be made on an unchallenged physician's certification alone. Therefore, we will remand this case to the School Board for a determination of when Bowman would have been able to resume her teaching duties. Both parties shall be allowed to offer evidence and to participate fully in the proceedings from which the Board will make its determination.

Order affirmed, as modified, and case remanded for proceedings not inconsistent with this opinion.

ORDER

AND Now, this 19th day of December, 1979, the Order of the Secretary of Education at No. 1-78, dated July 18, 1978, sustaining the appeal of Roberta Bowman and directing the Board of School Directors of the West Shore School District to reinstate her without loss of pay is affirmed, as modified, and the above captioned matter is remanded to the Board of School Directors for a determination of when Roberta Bowman could have resumed her teaching duties and, accordingly, the date from which her back pay will be calculated.