Serge Vladimirsky, : 
        Petitioner : 
: 
     v. : 
: 
The School District : 
of Philadelphia, :   No. 2288 C.D. 2014
        Respondent : 

The School District : 
of Philadelphia, : 
        Petitioner : 
: 
     v. : 
: 
Serge Vladimirsky, :   No. 2294 C.D. 2014
        Respondent :   Submitted: June 3, 2016[1]


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE DAN PELLEGRINI, Senior Judge

OPINION BY
JUDGE COVEY                    FILED: August 3, 2016

      The School District of Philadelphia (District) and Serge Vladimirsky (Vladimirsky) petition this Court for review of Acting Secretary of Education Carolyn C. Dumaresq's (Acting Secretary) November 19, 2014 order reinstating Vladimirsky to his position as a professional employee from July 20, 2011 to March 15, 2012, and sustaining Vladimirsky's March 15, 2012 employment termination.

      Vladimirsky presents six issues for this Court's review: (1) whether the District and the School Reform Commission (SRC)[2] failed to comply with the

---

[1] This case was held in abeyance pending the outcome of other similar cases before our Court. Thereafter, a new submission date of June 3, 2016 was issued.

[2] "Section 696(a) of the [School Code, 24 P.S. § 6-696,] states that the School Reform Commission is an 'instrumentality' of the school district with authority to exercise the powers of the

mandatory employment termination procedures set forth in the Public School Code of 1949 (School Code);[3] (2) whether the District and the SRC's failure to comply with the School Code violated Vladimirsky's due process rights; (3) whether the Acting Secretary erred in sustaining Vladimirsky's March 15, 2012 discharge; (4) whether the District was required to impose progressive discipline before terminating Vladimirsky's employment; (5) whether a two-year delay in the issuance of the Acting Secretary's order created the appearance of impropriety; and (6) whether the SRC's hearing examiner's status as a long-time District employee violated Vladimirsky's due process right to an impartial and unbiased tribunal.

The District presents five additional issues: (1) whether the School Code required the SRC to resolve that evidence existed and, if true, justified employment termination, before issuing charges; (2) whether the District was required to prove that the SRC read or knew about the charges or the employment termination hearing transcript before resolving to discharge him; (3) whether the District's July 20, 2011 letter suspended Vladimirsky without pay; (4) whether an SRC pre-charge determination would have violated Vladimirsky's due process rights; and (5) if the Court rules that there were procedural defects, whether remand is the proper remedy.

## Background

The District hired Vladimirsky as a professional employee on September 1, 1997 and he was employed as a tenured professional until his employment was terminated. Vladimirsky worked as a social studies teacher at Overbrook High School (Overbrook). On February 17, 2011, because Overbrook's then-principal

local school board." *Comm. to Keep Our Pub. Schs. Pub. v. Schweiker*, 803 A.2d 869, 874 (Pa. Cmwlth. 2002) (footnote omitted), *aff'd*, 838 A.2d 565 (Pa. 2003).

[3] Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1-101 – 27-2702.

2

Payne Young (Young) observed Vladimirsky's students disengaged from classroom activities, she knocked on the door and asked Vladimirsky about the class. Vladimirsky became angry and yelled at Young. Young walked away to attend a meeting and Vladimirsky followed her, speaking in a raised voice. Vladimirsky continued his aggressive behavior in front of Young's meeting participants. That day, Young issued an incident report concerning Vladimirsky's behavior.

On March 9, 2011, Overbrook academic leader Catherine Smith (Smith) notified Vladimirsky that several books had been thrown out of his classroom window, and she assisted Vladimirsky in identifying the responsible students. One of Vladimirsky's students made a video documenting Vladimirsky's extremely agitated behavior at the time. In the video, Vladimirsky shouted about the books being thrown out of the window and yelled obscenities at the students. He then aggressively approached a student holding a cellphone and grabbed the student's arm in an attempt to take the phone. When the student resisted, Vladimirsky lost his balance and fell on the student. The school police officer was called. Written incident statements by students, Smith and Vladimirsky corroborated the incident and Vladimirsky's reaction.

On March 11, 2011, Assistant Superintendent Linda Cliatt-Wayman instructed Vladimirsky to report to work at the High School Academic Division on March 14, 2011 pending an investigation. On March 23, 2011, Young conducted an investigatory conference attended by Vladimirsky, Young, Philadelphia Federation of Teachers (PFT) staff Jackie Dubin (Dubin) and the District's labor relations assistant Carole Porter (Porter). At the conference, Vladimirsky admitted to the February 17, 2011 verbal exchange and that his temper caused him problems. Vladimirsky and Dubin also reviewed the March 9, 2011 witness statements and video. Thereafter, Young prepared an unsatisfactory incident report (SEH-204) referencing both the February 17 and March 9, 2011 incidents, and recommending Vladimirsky's

discharge. Young also recommended placement of the SEH-204 in Vladimirsky's personnel file, and giving him an unsatisfactory rating for the September 2010 to June 30, 2011 period. Following an April 28, 2011 conference attended by Vladimirsky, Dubin, Porter and Young pertaining to the March 9, 2011 incident, Young issued a May 2, 2011 conference summary, wherein, she upheld the SEH-204 because Vladimirsky's March 9, 2011 response was excessive and unprofessional.

On June 8, 2011, the District's Talent Acquisition Office's Deputy Chief Lissa S. Johnson (Johnson)[4] held a second-level conference with Vladimirsky, Dubin and Porter regarding the February 17 and March 9, 2011 incidents. Johnson offered Vladimirsky an opportunity to provide additional information or comments. Vladimirsky apologized for the February 17, 2011 incident. With respect to the March 9, 2011 incident, Dubin, on Vladimirsky's behalf, stated that Vladimirsky felt that the students had betrayed his trust, and that he had acted emotionally. Vladimirsky acknowledged that he acted inappropriately when he physically confronted the student, and he did not deny using obscenities. Following the June 8, 2011 conference, Johnson issued a conference summary recommending that Vladimirsky's employment be terminated and that incident documentation be placed in his personnel file.

By a July 20, 2011 letter signed by SRC Chairman Robert L. Archie, Jr., Esquire and Deputy Superintendent Leroy D. Nunery (Nunery),[5] Vladimirsky was

---

[4] Lissa S. Johnson is also identified in Vladimirsky's brief as a District labor relations officer. *See* Vladimirsky's Br. at 7.

[5] In its brief, the District asserts:

> The Superintendent of the [District] was also the Secretary of the SRC, and the [SRC's Secretary's] signature . . . was required to appear on the statement of charges. [Nunery] was duly appointed as Deputy Superintendent of Schools for the [District] and he signed the statement of charges against Vladimirsky. As Deputy Superintendent, he had the legal authority to sign, in the absence of the

4

notified that the charges against him constituted "a willful violation of or failure to comply with the School Laws of this Commonwealth, and other improper conduct such as to constitute cause pursuant to . . . Section [1122] of the [School Code, 24 P.S. § 11-1122]." Reproduced Record (R.R.) at 162a. The letter informed Vladimirsky that they would recommend to the SRC that his employment with the District be terminated effective immediately, and that he had a right to request an SRC hearing. In the same letter, Vladimirsky was told that the District's payroll department would be advised to make the necessary salary adjustments.

By October 3, 2011 letter, Vladimirsky requested a hearing. On November 28, 2011, a hearing was held before Jeffrey White (Hearing Officer White), the SRC's hearing officer for all District dismissal, demotion or suspension cases. At the hearing, the District contended that it would demonstrate that Vladimirsky had willfully violated or failed to comply with Section 1122 of the School Code in that he had "administered corporal punishment to the student." R.R. at 17a.[6]

---

Superintendent, the detailed written charges in support of the proposed dismissal.

District's Br. at 13 n.3 (citations omitted). In support of its statement, the District cites to the SRC's findings of fact and conclusions of law.

[6] Citing to the hearing transcript, the Acting Secretary inaccurately stated:

District Counsel stated that the dismissal of . . . Vladimirsky was based on the willful violation of or failure to comply with the School Laws of this Commonwealth, and other improper conduct such as to constitute cause pursuant to 24 P.S. [§] 11-1122 of the [School Code]. Specifically, the District stated that **by his intemperate actions**, . . . Vladimirsky violated [District] Policy against the use of corporal punishment.

R.R. at 101a (emphasis added). In fact, the July 20, 2011 letter did not state that Vladimirsky was being charged with intemperance, and the District did not assert at the November 28, 2011 hearing that Vladimirsky had been so charged.

5

By April 5, 2012 letter, Hearing Officer White notified Vladimirsky that the SRC had recommended that Vladimirsky's employment be terminated for intemperance and willful violation of "the School Laws." R.R. at 101a. The letter also advised Vladimirsky that after full consideration of the charges, testimony, evidence and arguments, on March 15, 2012, the SRC resolved to adopt Hearing Officer White's findings of fact and conclusions of law enclosed therein, and that Vladimirsky's employment was terminated effective July 20, 2011.

Vladimirsky timely appealed from the SRC's decision to the Acting Secretary. On June 4, 2012, argument was held before Hearing Examiner Karen S. Feuchtenberger. On November 19, 2014, the Acting Secretary ordered that Vladimirsky be reinstated to his position as a professional employee as of July 20, 2011, but sustained his March 15, 2012 discharge and ordered that he receive the compensation lost between July 20, 2011 and March 15, 2012. The District and Vladimirsky appealed to this Court.[7]

### Vladimirsky's Arguments

Vladimirsky first contends that the Acting Secretary erred in sustaining the March 15, 2012 dismissal because the District did not comply with the School Code's mandatory discharge procedures when **the District terminated his employment as a professional employee on July 20, 2011** without a hearing, and then, belatedly **held a hearing more than four months later** on November 28, 2011 which also did not comply with the School Code, and finally **resolved to ratify Vladimirsky's illegal employment termination four months later** on March 15,

---

[7] "This Court's standard of review of a decision of the Secretary of Education is limited to [the] determination of whether substantial evidence supports necessary factual findings, and whether an error of law or constitutional violation was committed." *Curl v. Solanco Sch. Dist.*, 936 A.2d 183, 185 n.1 (Pa. Cmwlth. 2007).

6

2012. As a result, Vladimirsky asserts that his employment termination is *void ab initio*. The District argues that it complied with Section 1127 of the School Code.[8]

The District sent Vladimirsky a letter dated July 20, 2011 which stated, in relevant part:

> This is to advise you that **we shall recommend to the [SRC]** that your employment with [the District] **be terminated effective immediately. The [] District's Payroll Department shall be advised to make the necessary salary adjustments.** The charges against you constitute just cause pursuant to the collective bargaining agreement and, in addition, constitute a willful violation of or failure to comply with the School Laws of this Commonwealth, and other improper conduct such as to constitute cause pursuant to . . . Section []1122 of the [School Code, 24 P.S. § 11-1122].

R.R. at 162a (emphasis added). After summarizing the February 17 and March 9, 2011 incidents and the subsequent investigations and conferences, the letter concluded:

> The Deputy Chief is recommending that the following consequences be applied:
>
> - That you will be immediately terminated from employment with [the District.]
>
> - All documentation will be forwarded to your official personnel file.
>
> You are entitled to request a hearing before the [SRC]. If it is your intention to appeal this recommendation, you must contact Michael A. Davis, General Counsel . . . in writing, within five (5) days of receipt of this letter. . . . Your hearing, if you request one, will be on July 28 at 11:30 a[.]m[.] . . . .
>
> Failure to request a hearing in writing within the time stated will be deemed a waiver of any and all rights you may have to an appeal.

---

[8] 24 P.S. § 11-1127.

7

> In the alternative, you may utilize the grievance procedure by requesting your union to follow the collective bargaining agreement grievance procedure applicable to you.
>
> You may elect one or the other of these two appeal procedures, but not both.

R.R. at 165a. Thereafter, Vladimirsky requested an SRC hearing which occurred on November 28, 2011. Vladimirsky's subsequent discharge did not occur until the SRC's March 15, 2012 resolution. Although the resolution stated that Vladimirsky's employment termination was effective July 20, 2011, the Acting Secretary's November 19, 2014 order reinstated Vladimirsky to his position as a professional employee from July 20, 2011 to March 15, 2012.

> Section 1127 of the School Code states:
>
> Before any professional employe[e] having attained a status of permanent tenure is dismissed by the board of school directors, such board of school directors shall furnish such professional employe[e] with a detailed written statement of the charges upon which his or her proposed dismissal is based and shall conduct a hearing. A written notice signed by the president and attested by the secretary of the board of school directors shall be forwarded by registered mail to the professional employe[e] setting forth the time and place when and where such professional employe[e] will be given an opportunity to be heard either in person or by counsel, or both, before the board of school directors and setting forth a detailed statement of the charges. Such hearing shall not be sooner than ten (10) days nor later than fifteen (15) days after such written notice. At such hearing all testimony offered, including that of complainants and their witnesses, as well as that of the accused professional employe[e] and his or her witnesses, shall be recorded by a competent disinterested public stenographer whose services shall be furnished by the school district at its expense. Any such hearing may be postponed, continued or adjourned.

24 P.S. § 11-1127.

Our Supreme Court has held:

The termination of the contract of a tenured professional school employee is *controlled* by the [School] Code. . . . The language of [S]ection 1122 [of the School Code] makes clear that a tenured professional employee may be dismissed *only* for the reasons set forth in that section.[9]

In addition to the statutory limitation of the grounds for dismissal, the [School] Code accords the tenured professional employee **explicit procedural safeguards**.[FN]10 24 P.S. §§ 11-1126 -- 11-1131. A valid dismissal of a tenured professional employee **can be effected *only* if the school district acts in full compliance with these legislatively[-]prescribed procedures**.

> [FN]10. Section 1127 [of the School Code] requires **the school board** to serve the professional employee with a detailed written statement of charges and written notice to appear at a board hearing. The employee is to be given the opportunity to be heard in person or by counsel, and testimony is to be transcribed by an impartial stenographer at school district expense. . . . After 'full, impartial and unbiased consideration' of the charges, the Board is to vote by roll-call, a vote of two-thirds of its members being required to effect a dismissal. 24 P.S. § 11-1129.

---

[9] Section 1122(a) of the School Code provides that a professional employee's contract may only be terminated for:

> immorality; incompetency; unsatisfactory teaching performance . . . ; intemperance; cruelty; persistent negligence in the performance of duties; wilful neglect of duties; physical or mental disability as documented by competent medical evidence, which . . . substantially interferes with the employe[e]'s ability to perform the essential functions of his employment; advocation of or participating in un-American or subversive doctrines; conviction of a felony or acceptance of a guilty plea or nolo contendere therefor; persistent and wilful violation of or failure to comply with school laws of this Commonwealth (including official directives and established policy of the board of directors)[.]

24 P.S. § 11-1122(a).

9

*Neshaminy Fed'n of Teachers v. Neshaminy Sch. Dist.*, 462 A.2d 629, 636 (Pa. 1983) (citations omitted; bold emphasis added). This Court also recognized that:

> [I]t is veritably a legal maxim in this Commonwealth that the provisions of the teacher's tenure, as found in the School Code requires strict compliance. *See Swink's Case*, . . . 200 A. 200 ([Pa. Super.] 1938), wherein the court said:
>
>> 'Nevertheless, the procedure for the dismissal of a professional employee of a school district is established by statute. **There may be no material deviation from these procedural requirements**. . . . The burden [at the initial hearing] was on the board to show a proper dismissal of appellant; and she was entitled to the benefit of every right secured to her by the School Code. . . . **Unless** she was **dismissed in the prescribed manner**, having been accorded every right secured to her by statute, her **dismissal was illegal**.' . . . [*Id*. at] 202[-]03.
>>
>> 'Likewise, in dismissing a teacher, an observance of the procedure prescribed is mandatory.' . . . [*Id.*] at 204.
>
> *See also Snyder v. Washington T[wp.] Sch[.] Dist[.]*, . . . 178 A. 312 ([Pa. Super.] 1935). As we read the cases, where a school board undertakes to terminate a contract, dismiss or demote a professional employe[e], **the procedure set forth in the School Code must be strictly followed**, and failure on the part of the Board to comply therewith renders an attempted demotion abortive.

*Abington Sch. Dist. v. Pittenger*, 305 A.2d 382, 385-86 (Pa. Cmwlth. 1973) (emphasis added); *see also Sch. Dist. of Phila. v. Jones*, __ A.3d __ (Pa. Cmwlth. No. 2150 C.D. 2013, filed June 2, 2016).

As the above-quoted precedent makes clear, Vladimirsky could only be dismissed from his employment for conduct that comes within Section 1122(a) of the School Code. Further, **before** dismissing Vladimirsky, **the SRC** was obligated to strictly comply with Section 1127 of the School Code "which **require**[**d**] **the** [*SRC*]

to *resolve* to [dismiss] the employee and to furnish him with a written statement of the charges prior to the hearing[,]" and to hold a hearing. *Patchel v. Wilkinsburg Sch. Dist.*, 400 A.2d 229, 232 (Pa. Cmwlth. 1979) (bolded emphasis added). Our Supreme Court has held:

> **The burden of complying with the statute rests with the school board**; should they [sic] fail to conduct their [sic] business as required, the consequences ought to lie at their [sic] door, not at the door of their [sic] victims. They [sic] must not be permitted to advantage themselves [sic] of their [sic] own failures to the detriment of their [sic] employees.

*Mullen v. DuBois Area Sch. Dist.*, 259 A.2d 877, 880-81 (Pa. 1969) (emphasis added).

In the instant case, there is no record evidence that the July 20, 2011 letter was the result of **the board of school directors** (in this case, the SRC) "[*r*]*esolv*[*ing*] to [dismiss Vladimirsky] and to furnish him with a written statement of the charges prior to the hearing."[10] *Patchel*, 400 A.2d at 232. In fact, the District admits that the July 20, 2011 letter was **not** sent on the SRC's behalf as required by Section 1127 of the School Code but, **as explicitly admitted in the District's brief**, was "[t]he **administration**[**'s**] . . . recommend[ation for] termination[.]"[11] District's Br. at 25 (emphasis added). Importantly, the July 20, 2011 letter also stated that the recommended employment termination was to be effective immediately, and that the payroll department would be so advised. Because Vladimirsky was paid for the

---

[10] The Acting Secretary's Opinion and Order states, "[t]here is no evidence in the record that, prior to the hearing on November 28, 2011, the SRC had resolved to dismiss . . . Vladimirsky and that it had directed the Chairman and Secretary of the SRC to advise . . . Vladimirsky of his right to a hearing." R.R. at 102a ¶ 33. Further, "[t]he only evidence of the SRC's knowledge of the charges against . . . Vladimirsky and of the hearing was when the SRC resolved on March 15, 2012, to dismiss . . . Vladimirsky, effective July 20, 2011." *Id.* ¶ 35.

[11] The District also admits that in the July 20, 2011 letter, "**[t]he administration was recommending termination**, and it recognized that **the SRC (and not the administration)** would decide if termination [was] appropriate." District's Br. at 25 (emphasis added).

2010-2011 school year, but not thereafter, it would appear that his employment was terminated as of the date of the letter – July 20, 2011. The SRC resolution did not occur until March 15, 2012, but retroactively set Vladimirsky's dismissal date as July 20, 2011. Clearly, the November 28, 2011 SRC hearing and the March 15, 2012 resolution do not pre-date Vladimirsky's discharge. Accordingly, the Acting Secretary concluded:

> The record evidences that . . . Vladimirsky was paid for his employment with the District through the 2010-2011 school year but was no longer employed by the District beyond that school year. Thus, . . . Vladimirsky was dismissed as of, at least, July 20, 2011, without any action by the SRC. The dismissal was a dismissal by administrative action, not by action of the SRC.

R.R. at 108a.

This Court rejected a school district's similar conduct in *Pittenger*.[12] The *Pittenger* Court explained:

> In this case, the administrative staff of the school district had already accomplished the demotion before the Board had any notice or knowledge of same. To permit the Board to follow the procedure it utilized in this case, is to permit the Board to circumvent the very intent of the teacher tenure provisions of the School Code. **It certainly could not be argued that the legislative intent permits the school district to demote teachers without Board action, so long as the teacher does not ask for a hearing.** Quite to the contrary, **the statute evidences a legislative intent for Board action**, even where there is consent by the professional employe[e]. Further, if there is no consent, then perforce the Legislature has required Board action. We find no specific provision, or even implied provision, which would permit ratification by the Board of administrative staff[-]directed demotions.

---

[12] Although *Pittenger* involved a demotion rather than an employment termination, this Court's reasoning is nevertheless applicable.

12

*Pittenger*, 305 A.2d at 386 (emphasis added).  Here, as the Acting Secretary found, the District terminated Vladimirsky's employment before the SRC had any knowledge of the matter.  Accordingly, we hold that the District failed to comply with the School Code's mandatory employment termination procedures.[13]

## Due Process

Vladimirsky next argues that when the District terminated his employment by the July 20, 2011 letter, its failure to comply with the School Code's procedural safeguards denied him due process.  The District rejoins that Vladimirsky's employment was not terminated until after an SRC hearing "and a

---

[13] Further, the record evidence does not demonstrate that the District complied with Section 1129 of the School Code, which states:

> After fully hearing the charges or complaints and hearing all witnesses produced by the board and the person against whom the charges are pending, and after full, impartial and unbiased consideration thereof, the board of school directors **shall by a two-thirds vote of all the members thereof,** *to be recorded by roll call*, **determine whether such charges or complaints have been sustained and whether the evidence substantiates such charges and complaints, and if so determined shall discharge such professional employe[e].**  If less than two-thirds of all of the members of the board vote in favor of discharge, the professional employe[e] shall be retained and the complaint shall be dismissed.

24 P.S. § 11-1129 (bold and italic emphasis added).  There is no record evidence that the March 15, 2012 vote was recorded by roll call or that any members of the SRC read the hearing transcript prior to the SRC resolution.  Instead, the SRC's resolution is a list of numerous employee appointments and employment terminations, and with respect to Vladimirsky, merely states:

> RESOLVED, That . . . Vladimirsky be dismissed from the position of Teacher with the [District] effective July 20, 2011, and be it
>
> FURTHER RESOLVED, That the Findings of Fact and Conclusions of Law on file with the minutes of the [SRC] be adopted.

R.R. at 3a.  Based upon this record, it appears the District may have violated Section 1129 of the School Code.

public vote to terminate on March 15, 2012" and, thus, the July 20, 2011 letter merely suspended Vladimirsky without pay pending a hearing and/or discharge. District's Br. at 14; *see also* District's Br. at 23-24.

As a tenured professional employee, **Vladimirsky has a property interest in continued employment**. *Andresky v. W. Allegheny Sch. Dist*., 437 A.2d 1075 (Pa. Cmwlth. 1981). The United States (U.S.) Supreme Court has explained:

> Property interests, of course, are not created by the [U.S.] Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). The U.S. Supreme Court expounded in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985):

> If a clearer holding is needed, we provide it today. The point is straightforward: the Due Process Clause [of the U.S. Constitution] provides that certain substantive rights— life, liberty, and property—cannot be deprived except pursuant to constitutionally[-]adequate procedures. The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology. 'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty. The right to due process 'is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, **it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards**.' *Arnett v. Kennedy*, . . . 416 U.S. [134,] 167 . . . [(1974)] (POWELL, J., concurring in part and concurring in result in part); *see id*., at 185 . . . (WHITE, J., concurring in part and dissenting in part).

*Loudermill*, 470 U.S. at 541 (emphasis added).

14

Vladimirsky has a legitimate claim to continued employment secured by state statute. Specifically, Section 1122 of the School Code provides that the contract of a professional employee may only be terminated for immorality, incompetency, unsatisfactory teaching performance, intemperance, cruelty, persistent negligence, wilful neglect of duties, physical or mental disability which substantially interferes with an employee's ability to perform essential job functions, advocation of un-American activities, conviction of a felony or acceptance of a guilty plea, or persistent and wilful violation of or failure to comply with school laws. *See* 24 P.S. § 11-1122.

> Pennsylvania courts have construed Section 1127 [of the School Code] to mean that **a tenured teacher can only be dismissed by a school district's board**, not its administrative staff. **In no case can the effective date of the dismissal be earlier than the date of the school board's resolution.** Further, **the statutory procedures for dismissal must be strictly followed** and . . . no material deviation therefrom is permissible. **A deviation from these procedures constitutes a denial of due process.**

*Neshaminy Sch. Dist. v. Neshaminy Fed'n of Teachers*, 84 A.3d 391, 397 (Pa. Cmwlth. 2014) (citations and quotation marks omitted; emphasis added).

In this case, the District's position that the July 20, 2011 letter was merely a suspension without pay pending hearing and/or discharge is perplexing. The District admits in its brief that "[u]nder Pennsylvania law, school administrators do not have authority to terminate tenured professional employees[' employment]. In the [District], only the SRC has that authority. Just as plainly, school administration may *suspend* a tenured professional employee without pay pending discharge." District's Br. at 23. However, the District's position contradicts its earlier argument that the July 20, 2011 letter was the result of SRC action, rather than administrative District action. These irreconcilable positions demonstrate the District's

disingenuous attempt to justify its School Code violation. The July 20, 2011 letter does not lend itself to informing Vladimirsky that his employment with the District has been suspended. If that is what the District intended then it could have so communicated. Rather, the unambiguous words reveal finality and the District's intent to immediately discharge Vladimirsky. Moreover, the District's actions immediately after issuance of the letter in stopping Vladimirsky's pay with no statement beyond the words that the District recommends his immediate discharge further evidences a termination, not a suspension. "[A]ssuming arguendo that there was ambiguity, doubtful language is construed most strongly against the drafter thereof." *Rusiski v. Pribonic*, 515 A.2d 507, 510 (Pa. 1986). Thus, the letter cannot be construed as suspending Vladimirsky's employment.

Vladimirsky was dismissed as of July 20, 2011, the date his pay was officially stopped. Further, on March 15, 2012, the SRC made Vladimirsky's dismissal effective July 20, 2011. The Acting Secretary subsequently revised the termination date to March 15, 2012, the date of the SRC resolution, and ordered back pay for the time in between. However, this Court has explained that "[i]n no case can the effective date of the dismissal be earlier than the date of the school board's resolution." *Neshaminy Sch. Dist.*, 84 A.3d at 397. Moreover, a retroactive order does not cure the defect.[14] *See Pittenger*, 305 A.2d at 386 ("We find no specific provision, or even implied provision, which would permit ratification by the Board of administrative staff[-]directed [employment action]."). As explained above, the District did not comply with the School Code. Because "[a] deviation from these procedures constitutes a denial of due process[,]" we hold that the District violated Vladimirsky's due process rights and, therefore, the Acting Secretary erred in

---

[14] Our conclusion that the retroactive order changing the date of Vladimirsky's employment termination to the date of the SRC resolution cannot cure the District's failure to adhere to the mandatory statutory provisions is discussed more fully below.

upholding Vladimirsky's dismissal effective March 15, 2012. *Neshaminy Sch. Dist.*, 84 A.3d at 397.

### Appearance of Impropriety; Prosecutorial and Adjudicative Commingling

Finally, Vladimirsky argues that the two-year delay in the Acting Secretary's issuance of the decision raises an appearance of impropriety. Vladimirsky also contends that because Hearing Officer White was a long-time District employee, his hearing officer role commingled prosecutorial and adjudicatory functions and denied Vladimirsky due process.

In *Kinniry v. Abington School District*, 673 A.2d 429 (Pa. Cmwlth. 1996), this Court stated:

> We have previously held that **a petitioner seeking to establish that his or her due process rights have been violated bears the burden of proving that some harm or prejudice to his or her interests was caused by the delay.** Here, [the petitioner] alleges only that the passage of time between hearing and final adjudication was too long; he has not alleged that he was harmed or prejudiced in any way as a result of the delay. Although we do not condone unnecessary delay in adjudicating the fate of a person's livelihood, without evidence that [the petitioner] suffered any prejudice or harm as a result of the delay, we cannot conclude that [the petitioner's] due process rights were violated.

*Id.* at 433 (citation omitted; emphasis added). Because Vladimirsky has not offered any evidence of prejudice or harm to his interests from the Acting Secretary's delay, we cannot conclude that his due process rights were violated on that basis.

Vladimirsky contends, based on *Lyness v. State Board of Medicine*, 605 A.2d 1204 (Pa. 1992), that Hearing Officer White's involvement violated his due process rights. We recognize that, in *Lyness*, our Pennsylvania Supreme Court held:

17

"[W]here the very entity or individuals involved in the decision to prosecute are significantly involved in the adjudicatory phase of the proceedings, a violation of due process occurs." *Id*. at 1210 (quotation marks omitted). The *Lyness* Court further stated: "Whether or not any actual bias existed as a result of the [b]oard acting as both prosecutor and judge is inconsequential; the potential for bias and the **appearance of non-objectivity** is sufficient to create a fatal defect under the Pennsylvania Constitution." *Id.* (emphasis added).

Here, Hearing Officer White admitted at the hearing that he is "a hearing officer for the [District] both as a grievance hearing officer and as a hearing officer for the [SRC], which [he] ha[s] also been doing for seven years." R.R. at 9a. However, there is simply no evidence, nor has Vladimirsky cited to any, that Hearing Officer White engaged in any prosecutorial functions pertaining to Vladimirsky's case.

Further, in *Harmon v. Mifflin County School District*, 651 A.2d 681 (Pa. Cmwlth. 1994), *rev'd on other grounds*, 713 A.2d 620 (Pa. 1998), this Court expressly held that "[e]ven though [the School Code] requires a school board to terminate an employee and hear the challenge to that termination, *Lyness* simply doesn't apply because the 'interests' involved in the employment relationships are totally different than an independent agency['s] actions regulating individuals." *Harmon*, 651 A.2d at 686.

Finally, even if we found that Hearing Officer White had commingled prosecutorial and adjudicative functions, that commingling would not necessarily result in a due process violation. Our Supreme Court has recognized that:

> [T]he Secretary of Education's *de novo* review of the decision of a school board ensures that the requirements of due process are satisfied. The determination to be reviewed on appeal to the Commonwealth Court is that of the

18

> impartial factfinder, the Secretary of Education, rather than that of the school board.

*Katruska v. Bethlehem Ctr. Sch. Dist.*, 767 A.2d 1051, 1056 (Pa. 2001) (italics added). Thus, Vladimirsky's delay and commingling arguments are meritless.[15]

### The District's Arguments

After addressing Vladimirsky's arguments, three of the District's issues remain which are summarized as follows: (1) whether the Acting Secretary misinterpreted *Patchel* and *Pittenger* when she determined that a pre-charge resolution in favor of dismissal was required prior to holding Vladimirsky's hearing; (2) whether the SRC would have violated Vladimirsky's due process rights if it made a pre-charge determination; and (3) if the Court finds that there were procedural defects, whether the proper remedy is remand.

### *Patchel* and *Pittenger*

The District argues that the Acting Secretary misinterpreted *Patchel* and *Pittenger* when she determined that a pre-charge resolution in favor of dismissal was required prior to Vladimirsky's November 28, 2011 hearing.

The *Patchel* Court explained that in *Pittenger*, the Court

> held that in the case of a professional employee who had been demoted without a hearing, the later decision of the [school b]oard to ratify the improper administrative action was void. The facts here, however, are easily

---

[15] Vladimirsky also asserts that although the Acting Secretary properly found that the District failed to sustain the corporal punishment charge, the Acting Secretary erred when she sustained Vladimirsky's dismissal on intemperance grounds, since Vladimirsky had never been advised that his dismissal was being based on those grounds. Vladimirsky also contends that he was never afforded progressive discipline in violation of his contract. However, because we have concluded that the District failed to comply with the School Code and violated Vladimirsky's due process rights, we need not address these issues.

distinguishable. In [*Pittenger*], the hearing was not scheduled by the [school b]oard until months after the employee's demand for it, and the [school b]oard never saw the charges until the hearing began. There was a clear violation of **Section 1127 of the School Code, 24 P.S. § 11-1127,** which **requires the [*school b*]*oard* to *resolve* to demote the employee and to furnish him with a written statement of the charges prior to the hearing**. More importantly, in [*Pittenger*] we explicitly stated the manner in which the school board could have cured the defects in its procedure:

> The [school b]oard only **needed to have passed a resolution** that it had sufficient evidence to support its belief, to demote . . . [the professional employee] by some given date, and therein direct the Secretary and President of the [school b]oard to serve notice upon [the professional employee] of this fact and to advise him of his right to a hearing.

*Patchel*, 400 A.2d at 231-32 (bold emphasis added) (quoting *Pittenger*, 305 A.2d at 387). The District asserts that "[t]hose cases do not *require* the SRC or any other school board in the first instance to resolve, before the issuance of charges, that evidence exists that supports charges that, if true, would support dismissal." District's Br. at 19. Rather, the District maintains that "the Court simply explained how a school board might *remedy* a procedurally[-]defective demotion, which occurs when the administration of a school district - as opposed to the school board - 'had already accomplished the demotion' before the board had any notice or knowledge." *Id.*

The District cites *Clark v. Colonial School District*, 387 A.2d 1027 (Pa. Cmwlth. 1978), to support its position. The *Clark* Court held that "[t]he School Code clearly does not require formal school board action authorizing the initiation of charges and the sending of notice of hearing." *Id.* at 1029. Notwithstanding, **after** *Clark*, this Court expressly interpreted otherwise in *Patchel*. The *Patchel* Court opined that it: "was [] clear . . . Section 1127 of the School Code . . . requires the

[*school b*]*oard* to *resolve* to demote the employee and to furnish him with a written statement of the charges prior to the hearing." *Patchel*, 400 A.2d at 232; *see also Jones*.

> **[b]efore any professional employe[e] having attained a status of permanent tenure is dismissed by the board of school directors,** such board of school directors shall furnish such professional employe[e] with a detailed written statement of the charges upon which his or her proposed dismissal is based and shall conduct a hearing. **A written notice signed by the president and attested by the secretary of the board of school directors shall be forwarded by registered mail to the professional employe**[e] setting forth the time and place when and where such employe[e] will be given an opportunity to be heard either in person or by counsel, or both, before the board of school directors and setting forth a detailed statement of the charges.

24 P.S. § 11-1127 (emphasis added). Here, the District has admitted that the July 20, 2011 letter, signed by the Deputy Superintendent and the SRC Chairman, was not furnished on the SRC's behalf, but was "[t]he **administration**[**'s**] . . . recommend[ation for] termination[.]" District's Br. at 25. Thus, even if we were to ignore this Court's clear mandate in *Patchel*, and more recently in *Jones,* and conclude that a resolution was not expressly required under Section 1127 of the School Code, that section still explicitly requires that the board of school directors issue a statement of charges. The July 20, 2011 letter does not demonstrate that the charges were brought on the SRC's behalf. Rather, the letter and the District's admission reflect just the opposite. In fact, as the Acting Secretary stated: "The only evidence in the record of the SRC's knowledge concerning . . . Vladimirsky's dismissal is the March 15, 2012 resolution dismissing him from employment with the

21

District, effective July 20, 2011." R.R. at 107a. Accordingly, we discern no error in the Acting Secretary's interpretation of *Patchel* and *Pittenger*.[16]

## Pre-Charge Determination

The District maintains that it would have violated Vladimirsky's due process rights if it in fact had made a pre-charge determination. Specifically, the District cites *Lyness* to support its contention that if the SRC had resolved to dismiss Vladimirsky prior to Vladimirsky's notice of charges it would have been mixing prosecutorial and adjudicatory functions, thus, at least by the appearance of impropriety, violating Vladimirsky's due process rights.

As this Court discussed in *Jones*, the *Harmon* Court expressly rejected *Lyness*' applicability to School Code employment actions "because the 'interests' involved in the employment relationships are totally different than an independent agency['s] actions regulating individuals."[17] *Harmon*, 651 A.2d at 686. The *Jones* Court quoted *Harmon*, stating:

> We have recognized this distinction and determined that the same type of due process requirements do not apply to school boards as they do to other independent administrative agencies. In *Covert v. Bensalem Township School District*, . . . 522 A.2d 129 ([Pa. Cmwlth.] 1987), this [C]ourt held that the inherent potential for bias on the part of school boards has long been recognized. We continued:

---

[16] Even if the Deputy Superintendent had the SRC Secretary's authority, as discussed above, the District still did not fully comply with the requirements of Section 1127 of the School Code because the notice and the hearing were required **before** Vladimirsky's dismissal and here, Vladimirsky's employment termination was effective the date of the purported notice.

[17] *Lyness* involved the State Board of Medicine.

22

The making of the charges presupposes that the members of the board had some knowledge of the facts upon which the charges were based. Unless they had an opinion that the charges, if sustained, would warrant dismissal, they should never have been made . . . . We do not think that anything more was required of the members of the board than that they could hear and determine the charges against appellant on the evidence given before them, uninfluenced by other previous impressions.

[*Covert*], 522 A.2d at 131 (quoting *Lomas v.* [*Bd.*] *of* [*Sch.*] *Dir*[*s.*] *of* [*Nw.*] *Lehigh* [*Sch.*] [*Dist.*], . . . 444 A.2d 1319, 1325 ([Pa. Cmwlth.] 1982)).

*Harmon*, 651 A.2d at 686-87.

*Jones,* ___ A.3d at ___, slip op. at 23. Accordingly, this argument is without support.

## Remand

Finally, the District argues that if this Court finds that there is a procedural defect, the proper remedy is remand not reinstatement and compensation. Specifically, the District contends that: "Here, and only here, is where [*Pittenger*] is relevant, because the Court stated in that case that a school board might remedy a procedural defect by resolving that evidence existed as of a certain date that justified termination." District's Br. at 32-33. In *Jones,* this Court rejected this argument, opining:

The District misconstrues the holding in *Pittenger.* The *Pittenger* Court held:

> It **would have been** a **simple** matter **for the [school b]oard to have cured the defects at the outset**. The [school b]oard only needed to have passed a resolution that it had sufficient evidence to support its belief, to demote [the petitioner] by some given date, and therein direct the Secretary and President of the [school b]oard to serve notice upon [the petitioner] of this fact and to advise him of his right to a hearing. At this point, [the petitioner] would have had a decision to make: whether to request the hearing or consent to the demotion. **The [school b]oard did not follow this procedure. Instead, it permitted its administrative staff to demote [the petitioner] without [school b]oard action**, and only after [the petitioner's] demand for a hearing, set the wheels in motion for a hearing several months later. As alluded to hereinbefore, the [school b]oard did not know the contents of the charges which had been promulgated by the Principal until the first day of hearing. **This was improper**.
>
> *Id.* at 387 (emphasis added). Clearly, the Court is referring to what could have been done **prior to the hearing**, not after the fact as the District purports.

*Jones*, __ A.3d at ___, slip op. at 24. The *Jones* Court quoted from this Court's decision in *Neshaminy*, further explaining:

> [T]he statutory procedures for dismissal 'must be strictly followed and . . . no material deviation therefrom is permissible.' [*Dep't*] *of* [*Educ.*] *v. Oxford Area* [*Sch.*] [*Dist.*], . . . 356 A.2d 857, 860 (Pa. Cmwlth. 1976). A deviation from these procedures constitutes a denial of due process. *Id*. at 860-61.
>
> In *Oxford*, the district superintendent recommended that a teacher who had been arrested for shoplifting be dismissed for immorality. The superintendent testified as a

24

witness at the school board hearing and participated in the school board's post-hearing deliberations. The school board voted to dismiss the teacher. This Court held that the School Code's requirement of 'impartial and unbiased' consideration had been violated, although inadvertently, and remanded to the school board for a new hearing. *Id*. at 861.

In *In re Swink*, . . . 200 A. 200 (Pa. Super. 1938), a school board voted to dismiss a teacher for immorality. Thereafter, it sent her a notice stating that she could attend a hearing to convince the board of the reasons she should be reinstated. The Superior Court held that dismissing the teacher without a prior hearing violated the statutory procedure in effect at that time. These deviations from the statutory procedures constituted '**fatal defects**,' making the school board's dismissal an 'illegal' act. *Id*. at 203. Accordingly, the Superior Court reversed the school board's decision.

*Neshaminy* []*,* 84 A.3d at 397-98 (footnote omitted; emphasis added). This distinction between the violations in *Oxford* and *Swink* demonstrates the proper manner of disposition in such circumstances. In *Oxford*, the due process violation occurred when the board failed to provide an impartial and unbiased hearing and thus, the violation could be cured with a remand for a new hearing. In contrast, the Superior Court in *Swink* found that the school board's action in employer dismissing a tenured teacher without following the statutory procedure for employment termination constituted a **fatal defect**.

*Jones*, __ A.3d at ___, slip op. at 24-25.

The facts in the instant matter are similar to those of *Swink*. Notably, the *Swink* Court stated:

Our appellate courts have frequently held that a valid and enforceable contract between a teacher and a school district could be created only by compliance with the strict requirements of the statute. Likewise, in dismissing a teacher, an observance of the procedure prescribed is

25

> mandatory. The board of school directors cannot be relieved of the consequences of its failure to observe the essential statutory requirements in dismissing a teacher any more than a teacher can be relieved from showing the vital and essential elements required to make a valid and enforceable contract between the teacher and the school district when such teacher seeks to enforce such contractual obligation. **The procedure which the board adopted was irregular and fatally defective**. There was **no required statement of charges** before dismissal, **no proper notice of hearing** before dismissal, and **no recording on the minutes how each member voted** after such hearing. **The action of the board**, and the affirmance of such action by the court below, **must be reversed for want of compliance with the provisions . . . .**

*Id*. at 204 (citations omitted; emphasis added). Failure to follow the statutory mandatory termination procedures requires reversal of the District's action as opposed to remanding (as in *Oxford* which involved the denial of an impartial and unbiased hearing).

Here, the specific procedural defects are as follows. Pursuant to well-established case law, the District was required to pass a resolution that it had sufficient evidence to support Vladimirsky's employment termination before sending him a notice of charges and intent to terminate his employment. No resolution was passed, and no notice was sent before Vladimirsky's employment termination. Instead, the District sent Vladimirsky a termination letter. In addition, the date of Vladimirsky's notice of charges and hearing was actually the effective date of his employment termination which is directly contrary to the School Code's requirement that a hearing pre-date the employment termination. Indeed, the required resolution took place **after** the hearing. Further, the SRC did not record the vote "by roll call [and] determine whether such charges or complaints have been sustained and whether the evidence substantiates such charges and complaints[.]" 24 P.S. § 11-1129.

26

A remand cannot cure the egregious failure of the District to comply with these procedural safeguards. As in *Swink*, we find the District's failure to follow Section 1127 of the School Code before terminating Vladimirsky's employment a fatal defect mandating reversal.

> When the District discharges a professional employee without full compliance with the School Code, 'the employee is entitled to **reinstatement**.' *West Shore Sch. Dist.* [*v. Bowman*], 409 A.2d [474,] 480 [(Pa. Cmwlth. 1979)] (emphasis added). 'We have repeatedly held that no dismissal of a tenured professional employee can be valid unless the dismissing school district acts in full compliance with the Code.' *Id.* 'The only conclusion we can reach on these facts is that [Vladimirsky's] dismissal was a nullity and that []he must be treated as if h[is] employment [was] never terminated.' *Id.* Thus, [Vladimirsky] is entitled to be reinstated to his former position with back pay, minus his obligation to mitigate damages, until the District properly terminates his employment in conformity with the procedural due process requirements set forth in the School Code.

*Jones*, __ A.3d at __, slip op. at 27.

**Due to the District's violation of Section 1127 of the School Code, and its consequential denial of Vladimirsky's due process rights, this Court is duty-bound to reverse the Acting Secretary's** November 19, 2014 order discharging Vladimirsky as of March 15, 2012. Accordingly, **Vladimirsky is reinstated to his position as a professional employee until the District properly terminates his employment in accordance with the School Code** and shall be entitled to the amount of compensation he is due as a result of his dismissal.

**Damages**

With respect to Vladimirsky's damages:

the law is well established that '[a] school teacher is not a public officer, but is an employe[e] of the school district, and the ordinary rules relating to damages for breach of contract of employment apply.' *Coble v. Sch. Dist. of Metal Twp.*, 116 A.2d 113, 115 (Pa. Super. 1955) (citation omitted). 'Where a teacher is wrongfully discharged, he is to be compensated for loss of salary during such period, but there is no requirement that the school district pay the compensation provided in the contract regardless of set-off or the amount of damages the employe[e] has suffered.' *Id.*

> [W]e find no apparent reason why the ordinary rules relating to damages for breach of contract of employment should not be applied. As stated in 47 Am.Jur., Schools, § 145, p. 402: . . . [I]n an action for breach of contract by one employed as a teacher, the measure of damages is the wages which were to be paid, less any sum actually earned, or which might have been earned, by the plaintiff by the exercise of reasonable diligence in seeking other similar employment.

*Id.* at 116. More recently, this Court held in *Merrell v. Chartiers Valley School District*, 51 A.3d 286 (Pa. Cmwlth. 2012):

> A plaintiff has a duty to mitigate damages. *Circle Bolt & Nut Co. v. Pa. Human Relations Comm'n*, 954 A.2d 1265 (Pa. Cmwlth. 2008). The duty to mitigate damages, however, 'is not onerous and does not require success.' *Id.* at 1270. All that is required to mitigate damages is to make 'an honest, good-faith effort.' *Id.* at 1271. The employer has the burden of proving that substantially comparable work was available and that the plaintiff failed to exercise reasonable due diligence in seeking

28

alternative employment. The substantially comparable or equivalent work refers to employment which affords virtually identical opportunities for a promotion, compensation and responsibilities. Whether the plaintiff properly mitigated damages is a factual determination to be made by the fact-finder.

*Merrell*, 51 A.3d at 298 (citations omitted).

*Jones*, ___ A.3d at ___, slip op. at 28-29. Accordingly, we remand this matter to the Secretary to determine the amount of compensation due Vladimirsky.

## Conclusion

**This Court does not condone Vladimirsky's conduct. However, "we resist the urge to permit 'bad facts [to] make bad law.'"** *Jones*, __ A.3d at __, slip op. at 29 (quoting *Doggett v. United States*, 505 U.S. 647, 659 (1992) (Thomas, J., dissenting) (emphasis added)); *Berg v. Nationwide Mut. Ins. Co.*, 6 A.3d 1002, 1017 n.3 (Pa. 2010) (Baer, J., concurring and dissenting); *see also Commonwealth v. States*, 938 A.2d 1016, 1028 (Pa. 2007) (Castille, J., dissenting). Given our conclusion that the District failed to adhere to the mandatory provisions of the School Code when it terminated Vladimirsky's employment, we are constrained to reverse the Acting Secretary's decision.

The admonishments this Court gave the District in *Jones* are equally applicable here and worthy of repeating:

The Legislature enacted the School Code and provided 'explicit procedural safeguards' that it **required** school boards to use when terminating the employment of a tenured professional. *Neshaminy Fed'n v. Neshaminy Sch. Dist.,* 462 A.2d 629, 636 (Pa. 1983). Our Supreme Court clearly and unambiguously stated that there must be **full compliance** with the provisions of the School Code in order to effectuate employment termination of a tenured

29

professional. Were we to affirm the Acting Secretary's order, allowing her review to cure the District's non-compliance with the School Code, we would eviscerate the very statutory protections that the Legislature afforded tenured professionals, thereby contravening legislative intent. In essence, we would be amending the statute. This we may not do. *See Mohamed v. Dep't of Transp.*[,] *Bureau of Motor Vehicles*, 40 A.3d 1186 (Pa. 2012). We may not, and will not encourage school boards and other government entities whose decisions are subject to review to disregard their mandatory statutory duties based on the belief that their malfeasance will be cured.

*Jones*, __ A.3d at __, slip op. at 29-30.

For all of the above reasons, the Acting Secretary's Order is reversed, and the matter is remanded to the Secretary with the direction to reinstate Vladimirsky and to calculate the compensation which he is due taking into consideration Vladimirsky's obligations to mitigate his damages.

_____

ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Serge Vladimirsky, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| The School District | : | |
| of Philadelphia, | : | No. 2288 C.D. 2014 |
| Respondent | : | |
| | : | |
| The School District | : | |
| of Philadelphia, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Serge Vladimirsky, | : | No. 2294 C.D. 2014 |
| Respondent | : | |

## O R D E R

AND NOW, this 3rd day of August, 2016, the Acting Secretary of Education's November 19, 2014 order is REVERSED. Serge Vladimirsky is hereby reinstated to his position as a professional employee of the School District of Philadelphia and the matter is REMANDED to the Secretary of Education for further proceedings consistent with this Opinion.

Jurisdiction is relinquished.

_____
ANNE E. COVEY, Judge