IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Slater, : 
             Petitioner : 
              : No. 725 C.D. 2022
      v. : 
              : Submitted: April 14, 2023
The School District of Philadelphia : 
(Department of Education), : 
             Respondent : 

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY JUDGE McCULLOUGH               FILED: February 5, 2024

James Slater (Petitioner) petitions for review of the Order and Opinion of the Acting Secretary of Education, Eric Hagerty (Acting Secretary), dated June 16, 2022, affirming the School District of Philadelphia's (School District) dismissal of him from his position as a tenured professional employee due to an incident that occurred on December 6, 2019. After careful review, we affirm.

## I.    FACTS AND PROCEDURAL HISTORY

### A.  December 6, 2019 Incident

Petitioner was a tenured professional employee of the School District as a teacher beginning in 2004, and he was assigned to Woodrow Wilson Middle School (Woodrow Wilson) from August 26, 2019, until December 9, 2019. (Reproduced Record (R.R.) at 62a; Supplemental Reproduced Record (S.R.R.) at 119b, 128b.)

On December 6, 2019, the regular teacher for the class where the incident occurred was absent and the class had a substitute teacher. (R.R. at 75a.) Petitioner

testified that when he entered the classroom, the class was out of order, many students were in the hallway acting aggressively, and one student threw something at him. (R.R. at 75a-76a.) Petitioner testified that after discovering the classroom phone had been disconnected, he went to another room to call the main office for help. *Id.* He went back to the classroom to assist the substitute teacher, at which time he became involved in a physical altercation with a student, S.M., and at least two other students. *Id.*

Woodrow Wilson principal, Shawn McGuigan, conducted an investigation of the incident by interviewing and taking signed statements from Petitioner, two other teachers, and 19 students. (R.R. at 34a, 36a-37a; S.R.R. at 12b-40b.) The investigative results concluded that the incident began when S.M. was attempting to leave the classroom while the substitute teacher was trying to enter the same room. (R.R. at 29a; S.R.R. at 19b-40b.) Petitioner shouted in S.M.'s face because he was blocking the substitute teacher's path into the room. *Id.* S.M. backed up and let the teacher into the room but Petitioner continued to scream at the student so forcefully that he spit in his face. *Id.* S.M. got angry and pushed Petitioner away. *Id.* Petitioner grabbed S.M. and choked him preventing him from breathing properly. *Id.* Two students, A.T. and T.R., attempted to pull Petitioner away from S.M. *Id.* Petitioner and the two other students became engaged in a brief physical conflict, which ended when a third teacher reported to the room and pulled everyone apart. *Id.* The students involved in the incident were taken to the nurse's office afterwards to be examined for injuries. The school nurse found S.M. to have red marks on his neck and scratches on his cheek and determined the injuries were consistent with being choked. (R.R. at 23a, 29a; S.R.R. at 41b-42b.) A.T. also had injuries to his neck. *Id.* Both

students' injuries were reported to the Philadelphia Police Department, the Department of Human Services (DHS) and the ChildLine and Abuse Registry.[1]

Petitioner also received injuries from the incident, sustaining contusions to his back, forearms and thorax. (R.R. at 176a-80a.) He met with a workers' compensation physician on December 8, 2019. *Id.* The workers' compensation physician referred him for physical therapy and signed a work release as of December 11, 2019, with light restrictions. *Id.* Petitioner was relegated to the reassignment room at the central district office while an investigation into the incident was pending. (R.R. at 62a.)

## B. Investigative Conferences

An investigatory conference was held on January 14, 2020, at which time Petitioner and his union representative were given an opportunity to respond to the allegations and written statements made against him. (S.R.R. at 12b-18b.) Present at the conference were Petitioner, Mr. McGuigan, a labor relations representative, Andrew Montagna, and a union representative, Suzanne Cataline. *Id.* Twenty-two written statements were provided, including written statements from two adults, one of which was the substitute teacher who was in the room at the time of the incident and supported the claim that Petitioner in fact caused the injuries to the students. Petitioner flatly denied all the allegations and statements made by the students, teachers, and the nurses.

After the conference, Mr. McGuigan concluded that Petitioner did assault several students during the December 6, 2019 incident, and because Petitioner had

---

[1] By letters dated December 30, 2019, and January 3, 2020, both allegations of suspected child abuse were deemed unfounded by DHS. (R.R. at 181a-182a.)

previously been disciplined for improper physical interactions with students,[2] Mr. McGuigan recommended that Petitioner's employment be terminated. (S.R.R at 18b.)

A second investigatory conference was held by Mr. McGuigan on September 9, 2020, to review the initial recommendation to terminate Petitioner from the School District. Petitioner claimed that his statements from the January 2020 conference were misinterpreted. He reiterated his position but failed to provide any supporting witnesses or evidence to counter the 20 plus witness statements taken on the day of the incident. (S.R.R. at 54b.) Mr. McGuigan upheld the recommendation that Petitioner should be terminated. *Id*.

On October 1, 2020, a "204 Second-Level conference" was conducted by Attorney Ronak Chokshi, Interim Deputy of the School District's Office of Employee and Labor Relations. Petitioner was provided another opportunity to address the witness statements and disciplinary recommendation. On October 16, 2020, Mr. Chokshi wrote a "Second Level Conference Summary" advising Petitioner that, based on the investigation, supporting documents, and Petitioner's prior disciplinary record,

_____

[2] Petitioner had several prior disciplinary actions filed against him with the School District while working at Lowell Elementary School. (S.R.R. at 76b-188b.) An incident occurred on November 21, 2014, in which it was found that Petitioner grabbed a student's earlobes, punished students by making them stand against the wall until "ready to be reintegrated," and made statements "unsuitable to a learning environment." (S.R.R. at 91b.) In a separate incident on November 24, 2014, Petitioner pushed a student to the ground, which was observed by another teacher who reported the incident to DHS. (S.R.R. at 86b-88b, 106b.) Petitioner was suspended for three days without pay and was warned that "any other unsatisfactory incident will lead to further disciplinary action which may include . . . dismissal from the [S]chool [D]istrict." (S.R.R. at 88b.)

A third incident occurred on January 4, 2017, during which Petitioner was accused of pulling a student's chair out from underneath him, causing him to hit his face on a table resulting in a bruised cheek. DHS was notified of the incident and later deemed the incident unfounded. (S.R.R. at 106b.) The School District filed a Second Level Conference Summary and recommended that Petitioner's employment be terminated. Following several investigative conferences, Petitioner was terminated without pay; however, his employment was later reinstated by Opinion and Order of then-Secretary of Education, Pedro Rivera, dated June 6, 2019. (S.R.R. at 101b-18b.)

4

the School District would be recommending to the School District's Board of Education (Board) that his employment be terminated. Mr. Chokshi further advised that Petitioner "will be suspended without pay effective immediately pending final action by the Board." (S.R.R. at 55b-57b.)

## C. Board Resolution and Statement of Charges

At a public meeting held on December 10, 2020, the Board approved, by a 7-0 vote, a resolution finding that there was sufficient evidence to support the recommendation to terminate Petitioner's employment.[3] (R.R. at 54a; S.R.R. at 6b, 11b.) By certified mail dated January 22, 2021, the Board provided Petitioner with a written Statement of Charges and Notice of Right to Hearing (Notice and Statement of Charges).[4] (S.R.R. at 128b-30b.) The Notice and Statement of Charges recounted the allegations against Petitioner as follows:

> In the [Second Level Conference Summary] prepared by Shawn McGuigan, Principal, it was noted that Principal McGuigan received a report that multiple students were injured as a result of an altercation with you. Principal McGuigan obtained over twenty student statements, nurse reports, teacher statements[,] and a picture. In general, the student statements indicated that during an altercation you grabbed two students around their neck[s] and/or choked them. The nurse reports also documented abrasions to one student's neck and "multiple areas of erythema" to the back of the neck of another student along with scratches to [his]

---

[3] On December 23, 2020, the School District erroneously sent Petitioner a termination of employment letter. (R.R. at 54a, 159a; S.R.R. at 121b-22b.) However, a correction letter was sent to Petitioner the same day by overnight mail, instructing him to disregard the December 23, 2020 letter that was sent in error, clarifying that the Board had resolved that there existed sufficient evidence to support the recommendation of his termination and advised him of his right to a hearing. (R.R. at 54a; S.R.R. at 123b.)

[4] This Notice and Statement of Charges superseded a previous version dated January 5, 2021, which inadvertently scheduled the hearing for only three days later. (S.R.R. at 124b-27b.)

5

lower cheek. In addition, a statement from a teacher indicated that you had one student in a "neck hold."

At the investigatory conference on December 11, 2019, you denied ever touching the neck area of any student. Instead, regarding student S[.]M[.], you stated that you attempted to slide his hands off of you. Regarding student A[.]T[.], who also alleged you grabbed his neck, you stated that you made no contact with him and he was not in the area for you to reach him. In general, you maintained that you were acting in self-defense and used reasonable force to protect yourself against students attacking you.

Based on all of the testimony and evidence, Principal McGuigan found that you assaulted the students. He recommended that your employment be terminated.

A second level conference was conducted on October 1, 2020 by Ronak Chokshi, Interim Deputy, Employee & Labor Relations. There, you again denied touching any student on [the] neck in response to direct questioning.

Mr. Chokshi noted that Students S[.]M[.] and A[.]T[.] both alleged that you choked and/or grabbed them by the neck, and that their statements were supported by other student witnesses along with a teacher witness who stated that you had a student in a neck hold. He also explained that documentation from the school nurse, who saw the students that same day, stated that student S[.]M[.] had two scratches on his lower cheek and multiples areas of erythema (redness) to the back of his neck. Mr. Chokshi noted that similar documentation for Student A[.]T[.] indicated that there were three abrasions to the student's neck—which was also shown in a photograph that was submitted as evidence. He stated that this additional evidence further corroborated the students' version of events.

Moreover, Mr. Chokshi found your denial of even touching any student's neck, particularly in light of the evidence referenced above, unpersuasive and not credible, which

6

further undermined the veracity of your version of the events as a whole that day.

Mr. Chokshi noted that your behavior was egregious, excessive and completely inconsistent with your responsibilities as a teacher. He also explained that it was violative of the [School] District's Code of Ethics, which requires that employees engage with students in a fair and respectful manner, along with Policy 317 which prohibits physical misconduct and/or threat of harm to anyone.

\* \* \* \*

Mr. Chokshi also noted that you were recommended for termination in the 2016-2017 school year after your principal found that you again acted in a physically aggressive manner towards another student at Lowell Elementary School. While that recommendation was subsequently reversed, Mr. Chokshi explained that your participation in the underlying disciplinary conferences was further evidence that you were well aware of the [School] District's policies prohibiting teachers from directing physically inappropriate behavior towards students.

Accordingly, based on the SEH-204, supporting documents and your record of employment as a whole, Mr. Chokshi concluded that Principal McGuigan's recommendation for termination should be upheld.

(S.R.R. at 128b-29b.)

The Board informed Petitioner that it had "resolved that there existed sufficient evidence to support the School District's recommendation" to terminate his employment, and that the allegations against him constituted "intemperance, cruelty, willful neglect of duties and persistent and willful violation of or failure to comply with school laws of this Commonwealth, including official directives and established policy of the [Board]" under Section 1122 of the Public School Code of 1949 (School Code).[5]

_____

[5] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 11-1122.

*Id.* at 128b-30b. The Board also advised Petitioner that "[he] remain[ed] employed but, suspended without pay with health benefits, pending a final decision on the School District's recommendation of dismissal." *Id.* at 129b. The Notice and Statement of Charges explicitly stated in bold type on the first page that it was "**not a final determination on the status of your employment**" and advised Petitioner of his right to contest the recommendation at a hearing on February 22, 2021, or through a grievance procedure under the collective bargaining agreement between the School District and his union. *Id.* (emphasis in original).

Petitioner contested the recommendation, and an administrative hearing was held remotely before Hearing Officer Rudolph Garcia on March 24, 2021. Petitioner was represented by counsel and given a full and fair opportunity to cross-examine every witness presented by the School District, to object to the School District's exhibits, to present exhibits, and to call witnesses on his behalf. The School District presented testimony by Mr. McGuigan, Mr. Chokshi, Jennifer Proctor and Patricia Melloy (school nurses), S.M. and T.R. (minor students), and Kevin Griffis (Woodrow Wilson's assistant principal). Hearing Officer Garcia issued findings of fact and conclusions of law on June 24, 2021, recommending that the Board terminate Petitioner's employment.

### D. Board Resolution Dismissing Petitioner and Appeal to Department

On August 19, 2021, an "Action Item 12" was placed on the Agenda of the Board's meeting styled as: "Approval of Personnel Terminations." Action Item 12 was a Resolution to approve the terminations of fourteen employees. Included in that Action Item on the last page was a sub-resolution to dismiss Petitioner and "adopt" the decision of Hearing Officer Garcia. (R.R. at 1a-6a.) Following roll call, the Board adopted Hearing Officer Garcia's findings of fact and conclusions of law and dismissed

8

Petitioner from his employment for engaging in physically inappropriate conduct towards students. *Id.* at 267a.

Petitioner appealed the Board's decision to the Department of Education (Department) on July 25, 2020. A remote hearing before Hearing Officer Maribeth Wilt-Seibert was held on October 14, 2021. *Id.* at 192a-234a. On June 16, 2022, the Acting Secretary issued an Opinion and Order affirming the School District's decision to dismiss Petitioner. The Acting Secretary found Petitioner not credible in all respects regarding his description of the incidents that led to his dismissal. He further held that Petitioner was properly suspended in November of 2020 and was provided with all due process.

## II.     ISSUES

Before this Court,[6] Petitioner presents seven issues for review.[7] First, he asks this Court to consider whether the School District followed the procedure outlined in the teacher tenure provisions of Section 1127 of the School Code, 24 P.S. § 11-1127 (Procedure on Dismissals; Charges; Notice; Hearing),[8] Section 1129 of the School

---

[6] Our review of the Acting Secretary's order is limited to determining whether an error of law was committed, constitutional rights were violated, or necessary findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704; *McCoy v. Lincoln Intermediate Unit No. 12*, 391 A.2d 1119, 1121 (Pa. Cmwlth. 1978). An administrative decision is supported by substantial evidence "when a reasonable man, acting reasonably, would have reached the same decision." *Central York School District v. Ehrhart*, 387 A.2d 1006, 1008 (Pa. Cmwlth. 1978).

[7] We have reordered and paraphrased the questions presented for clarity and ease of discussion.

[8] Section 1127 of the School Code provides:

> Before any professional employe having attained a status of permanent
> tenure is dismissed by the board of school directors, such board of
> school directors shall furnish such professional employe with a detailed

**(Footnote continued on next page…)**

9

Code, 24 P.S. § 11-1129 (Vote Required for Dismissals),[9] and Section 1151 of the School Code, 24 P.S. § 11-1151 (Salary Increases, Demotions),[10] when it terminated

---

written statement of the charges upon which his or her proposed dismissal is based and shall conduct a hearing. A written notice signed by the president and attested by the secretary of the board of school directors shall be forwarded by registered mail to the professional employe setting forth the time and place when and where such professional employe will be given an opportunity to be heard either in person or by counsel, or both, before the board of school directors and setting forth a detailed statement of the charges. Such hearing shall not be sooner than ten (10) days nor later than fifteen (15) days after such written notice. At such hearing all testimony offered, including that of complainants and their witnesses, as well as that of the accused professional employe and his or her witnesses, shall be recorded by a competent disinterested public stenographer whose services shall be furnished by the school district at its expense. Any such hearing may be postponed, continued or adjourned.

24 P.S. § 11-1127.

[9] Section 1129 of the School Code provides:

After fully hearing the charges or complaints and hearing all witnesses produced by the board [of school directors] and the person against whom the charges are pending, and after full, impartial and unbiased consideration thereof, the board of school directors shall by a two-thirds vote of all the members thereof, to be recorded by roll call, determine whether such charges or complaints have been sustained and whether the evidence substantiates such charges and complaints, and if so determined shall discharge such professional employe. If less than two-thirds of all of the members of the board [of school directors] vote in favor of discharge, the professional employe shall be retained and the complaint shall be dismissed.

24 P.S. § 11-1129.

[10] Section 1151 of the School Code provides:

**(Footnote continued on next page…)**

10

his employment. Imbedded in this argument is whether the School District had the authority to suspend his pay pending the outcome of termination proceedings and whether he was afforded proper due process. Petitioner also argues that there was a lack of substantial evidence to support the conclusion that he committed an act which warrants dismissal under the Causes for Termination set forth in Section 1122 of the School Code, 24 P.S. § 11-1122.

## III. <u>DISCUSSION</u>

### A. Petitioner's Procedural Arguments

#### 1. Procedure for Termination

First, Petitioner cites *Vladimirsky v. School District of Philadelphia*, 144 A.3d 986 (Pa. Cmwlth. 2016), and *School District of Philadelphia v. Jones*, 139 A.3d 358 (Pa. Cmwlth. 2016), to support his assertion that the School District's administrative staff suspended his pay and effectively terminated his employment as of December 10, 2020, without the mandatory prior Board hearing required by the School Code.

---

The salary of any district superintendent, assistant district superintendent or other professional employe in any school district may be increased at any time during the term for which such person is employed, whenever the board of school directors of the district deems it necessary or advisable to do so, but there shall be no demotion of any professional employe either in salary or in type of position, except as otherwise provided in this act, without the consent of the employe, or, if such consent is not received, then such demotion shall be subject to the right to a hearing before the board of school directors and an appeal in the same manner as hereinbefore provided in the case of the dismissal of a professional employe.

24 P.S. § 11-1151.

11

Recently, we rejected this very claim in a case with a very similar fact pattern. In *Prieto v. School District of Philadelphia (Department of Education)* (Pa. Cmwlth., No. 144 C.D. 2021, filed December 28, 2022), *appeal denied*, (Pa. No. 58 EAL 2023, filed August 22, 2023), Hugo Prieto (Prieto), a tenured teacher, threw a hardbound textbook at, and engaged in a fist fight with, a student.[11] The School District held an investigatory conference and a second-level conference. The Board approved a resolution finding that there was sufficient evidence to issue a statement of charges. The Board then provided Prieto with a written notice that included a statement of charges, informed him of his right to a hearing, and scheduled a hearing before the Board. The statement of charges indicated that Prieto was suspended without pay, but with health benefits, pending his termination proceedings. The Board held a hearing at which Prieto appeared with his counsel and was given the opportunity to call and question witnesses, cross-examine the other party's witnesses, and object to evidence offered by the opposing party. Slip op. at 2. The hearing officer issued findings of fact and conclusions of law, recommending that the Board terminate Prieto's employment. The Board adopted a resolution terminating Prieto's employment. Thereafter, Prieto appealed to the Acting Secretary. A virtual hearing was held before a hearing officer, after which the Acting Secretary issued a decision and order affirming the School District's dismissal of Prieto. *Id.* at 3.

On appeal, Prieto argued that the Board did not follow the School Code's termination procedures and, thus, violated his due process rights. Like Petitioner here, Prieto relied on *Vladimirsky* and *Jones* to argue that he was effectively terminated by the School District's administrative staff without a hearing in violation of the School Code.

---

[11] We note that both Prieto and Petitioner have been represented by the same legal counsel.

12

In *Vladimirsky*, this Court reversed the termination of a tenured employee because the letter terminating his employment sent by the School District was not authorized by the School Reform Commission (SRC)[12] but rather was sent by the School District administrator, which violated Section 1127 of the School Code. Specifically, the letter in *Vladimirsky* stated: "This is to advise you that we shall recommend to the [SRC] that **your employment with [the School District] be terminated effective immediately.**" 144 A.3d at 992 (emphasis added). After receiving the letter, the employee had a hearing before the SRC, and then later the SRC passed a resolution formally terminating the teacher. We held the School District's termination was procedurally defective. We determined the School District erred because: (1) an administrator sent the teacher a letter recommending that Vladimirsky be terminated effective immediately; (2) the statement of charges was not issued as the result of the passage of a resolution by the SRC; and (3) the SRC did not vote by roll call to determine whether the charges had been sustained. *Id.* at 994-95.

Similarly, in *Jones*, this Court reversed the termination of a tenured employee because the School District failed to follow the procedural requirements for termination found in the School Code. Additionally, the employee received a letter stating his "employment with [t]he [School District would] be terminated effective immediately" and his pay was stopped as of the date of the letter. *Jones*, 139 A.3d at 367. This Court in *Jones* faulted the School District for (1) having an administrator and the SRC chairman send the employee a letter recommending that he be terminated; (2) issuing a statement of charges but not as the result of the passage of a resolution by the SRC; and (3) approving a resolution in December 2010 terminating the employee retroactively to August 2009. *Id.* at 368.

---

[12] The SRC was replaced by the Board on July 1, 2018.

13

In *Prieto*, we distinguished *Vladimirsky* and *Jones* on the basis that, unlike in those cases, the Board initiated the termination of Prieto rather than its administrative staff. We recounted that (1) the Board passed a resolution stating that there was sufficient evidence to support the recommendation of the School District to terminate Prieto's employment; (2) the Board provided Prieto's written notice and statement of charges that post-dated the Board's resolution; and (3) Prieto was not terminated by the Board until after his hearing before the Board. We further noted that unlike the tenured employees in *Vladimirsky* and *Jones*, Prieto was not terminated effective immediately and was instead suspended pending a final decision on the recommendation for his dismissal. *Prieto*, slip op. at 6.

As in *Prieto*, Petitioner was not terminated by the School District's administrative staff. The October 16, 2020 Second Level Conference Summary sent by Mr. Chokshi cannot be construed as terminating Petitioner's employment effective immediately as he remained suspended from November 6, 2020, until the Board's final decision on the recommendation for his dismissal. Rather, as in *Prieto*, the Board initiated the termination by passing the following Resolution on December 10, 2020:

> RESOLVED, that there is sufficient evidence to support the recommendation of the Superintendent and/or his designee to terminate the employment, from the [School District], of the following professional employee:
>
> 1. [Petitioner]
>
> * * * *
> and be it,
>
> FURTHER RESOLVED, that the Secretary and [Board] President are directed to advise these professional employees of the action item and their right to a hearing.

14

(R.R. at 156a.)

As required by Section 1127 of the School Code, the Board's January 23, 2021 Notice and Statement of Charges set a date for a timely hearing to determine whether Petitioner should be terminated. *Id.* at 168a. The Notice and Statement of Charges also specifically stated, "**[t]his is not a final determination on the status of your employment** . . . .You remain employed but, suspended without pay with health benefits, pending a final decision on the School District recommendation of dismissal." *Id.* at 168a-69a (emphasis in original). A hearing was then conducted before Hearing Officer Garcia on March 24, 2021. *Id.* at 7a-148a. Hearing Officer Garcia issued findings of fact and conclusions of law on June 24, 2021, recommending that the Board terminate Petitioner's employment. The Board then on August 19, 2021, voted, 8-0, to terminate Petitioner's employment:

> RESOLVED, that [Petitioner] be dismissed from his employment as Teacher by the School District [], **effective August 19, 2021**, and be it
>
> FURTHER RESOLVED, that the Hearing Officer's Findings of Fact and Conclusions of Law are adopted as the reasons for this decision, and be it
>
> FURTHER RESOLVED, that this decision was made in accordance with the [School Code], as amended, **following an independent review of the record by the individual members of the [Board].**

(R.R. at 4a) (emphasis added).

Section 1127 of the School Code requires that before any professional employee is dismissed by the board of school directors, the board (1) shall furnish the employee with a detailed written statement of the charges upon which his or her proposed dismissal is based and (2) shall conduct a hearing. 24 P.S. § 11-1127.

15

This Court has interpreted Section 1127 as "requir[ing] the [board of school directors] to resolve to demote the employee and to furnish him with a written statement of the charges prior to the hearing." *Patchel v. Board of School Directors of the Wilkinsburg School District*, 400 A.2d 229, 232 (Pa. Cmwlth. 1979). As we further noted in *Patchel*, the board of school directors only needs to pass a resolution that it has sufficient evidence to support its belief to demote the professional employee and then direct the secretary and president of the board of school directors to notify the professional employee of this fact and advise him of his right to a hearing. *Id.* at 232 (quoting *The Board of School Directors of the Abington School District v. Pittenger*, 305 A.2d 382, 387 (Pa. Cmwlth. 1973)).

That is precisely what occurred here. Petitioner was not terminated prior to his Board hearing. In December of 2020, after hearing the charges against Petitioner, the Board voted by roll call that there existed sufficient evidence to support a recommendation of his termination and directed the Board secretary and president to advise Petitioner of the Resolution and his right to a hearing. In January of 2021, the president of the Board and the secretary of the Board sent Petitioner a letter containing a detailed written Notice of Statement of the Charges against him, and a notice of right to a hearing. Following the hearing before Hearing Officer Garcia, a roll call of the Board was taken prior to his termination, and the Board voted to terminate Petitioner. By issuing the Notice of Statement of Charges following passage of a Board Resolution, and terminating Petitioner after his Board hearing, the Board acted fully in compliance with the requirements of Section 1127. Accordingly, we agree with the Acting Secretary that the School District complied with the procedural requirements of Section 1127 of the School Code.

16

Petitioner next argues that the Board did not vote in accord with Section 1129 of the School Code, which requires that the board of school directors shall by a two-thirds vote of all members to be recorded by roll call, determine whether such charges have been sustained. 24 P.S. § 11-1129. He maintains that the Board "blindly adopted by roll call a [R]esolution that it did not even read" and "took no part in any aspect to the decision-making at any step of the way." (Petitioner's Br. at 46-47.) He also argues that the Board failed to comply with Section 1129 of the School Code because its vote on August 19, 2021, was done in a "block vote" to "approve" several personnel resolutions at once, including the terminations Resolution containing the nine names on the terminations list, which included a reference to Petitioner's matter. (Petitioner's Br. at 24-25.) He further contends that here, as in *Vladimirsky*, the Board "did not record the vote by roll call and determine whether such charges should have been sustained and whether the evidence substantiate[d] such charges and complaints." *Id.* at 47 (citing *Vladimirsky*, 144 A.3d at 1004). We must reject Petitioner's argument for several reasons.

First, simply because the Board's vote on multiple cases occurred at once does not mean that each case was not addressed or considered individually, as Petitioner advocates. Moreover, Petitioner's argument that the Board "blindly adopted" the Resolution is unfounded in the record and simply not supported. In fact, the August 19, 2021 Resolution specifically states that the Board's decision to terminate Petitioner's employment "**was made in accordance with the [School Code], as amended, following an independent review of the record by the individual members of the [Board].**" (R.R. at 4a) (emphasis added). The Resolution specifically states that the Board members reviewed the record in Petitioner's case and to the extent Petitioner does not believe that happened, he has not produced any

17

evidence. The only evidence in the record is the August 19, 2021 Resolution that states that the record was reviewed.

Therefore, we find the Acting Secretary did not err in concluding that the School District complied with the procedural requirements of Section 1127 of the School Code.

### 2. Dismissal Without a Hearing

Petitioner next contends that his dismissal was not in "strict compliance" with the mandatory procedural safeguards set forth in the School Code because, Mr. Chokshi, a member of the School District's administrative staff, had no authority to suspend his pay under the School Code without any knowledge or "action" of the Board. Petitioner argues that his suspension without pay was "in effect" a termination of his employment. (Petitioner's Br. at 26, 39, 41.)

This same argument was raised in *Prieto*. We specifically rejected the argument that Prieto was effectively dismissed on May 9, 2019, the date of his suspension, without a hearing, which he claimed was an "illegal act." *Prieto*, slip op. at 7. We first noted that Prieto was not terminated on May 9, 2019, but rather he was suspended on that date. We then considered whether Prieto was entitled to a hearing before the Board before he was suspended. Finding that he was not, we explained:

> It is well settled that suspension for cause without a hearing is permissible where the teacher's conduct is potentially harmful to the safety of the children or the teacher is unable to maintain order in the classroom creating a possibility for harm. *Kaplan v. Philadelphia School District*, 130 A.2d 672 (Pa. 1957); *Board of Education of School District of Philadelphia v. Kushner*, 530 A.2d 541 (Pa. Cmwlth. 1987); *Board of School Directors of the Eastern York School District v. Fasnacht*, 441 A.2d 481 (Pa. Cmwlth. 1982).

18

Here, Prieto lost control when he threw a book at a student and used physical force on a student. Prieto's actions presented a very real harm to the children. This alone justifies his pre-hearing suspension. Prieto's use of physical force on a student would have allowed the [School] District to suspend him without any hearing or investigatory conference. However, the [School] District held an investigatory conference on January 3, 2019, and a second-level conference on April 15, 2019, both of which were opportunities for the [School] District to investigate the facts and for Prieto to hear the allegations against him and respond. Importantly, Prieto was not suspended until the conclusion of both conferences on May 9, 2019, by Board action. Nevertheless, in this case, no pre-hearing was required for Prieto's suspension due to his intemperate conduct.

*Prieto*, slip op. at 7.

Here, as in *Prieto*, Petitioner was not terminated on October 16, 2020, rather he was suspended without pay for cause as of that date.[13] A suspension for cause without any hearing is permissible where the teacher's conduct is potentially harmful to the safety of the children or where teachers have been charged with inappropriate behavior involving students – as in Petitioner's case. *Kaplan*; *Kushner*; *Fasnacht*.

In this case, Petitioner's use of extreme physical force on several students and his inability to maintain classroom order would have allowed the School District to suspend him without any type of investigatory hearing at all. However, the School District went above and beyond in providing numerous opportunities for Petitioner to hear the allegations against him and to respond to them. No further process was required.

---

[13] It is undisputed that Petitioner continued to be paid for nearly a year without doing work.

### 3. Suspension Without Pay Pending Termination

Lastly, we address Petitioner's contention that his pay could not be constitutionally stopped until after the Board's termination hearing. Relying on *School District of Philadelphia v. Twer*, 447 A.2d 222 (Pa. 1982), Petitioner argues that a suspension of pay is a demotion in status and pay and requires the opportunity for a full, fair hearing held by the school board and a roll call vote to suspend the teacher. 24 P.S. § 11-1151. He contends there was never any "Board action" to suspend his employment status and pay, and that no administrative officer has any authority to suspend a teacher without pay or to hold any type of dismissal hearing.

In *Prieto*, the teacher asserted, as Petitioner does here, that a suspension without pay pending dismissal is effectively a termination and a violation of the School Code. Rejecting the argument, we explained,

> Pennsylvania courts have long permitted suspensions pending dismissal for public employees, including teachers. *See Burger v. Board of School Directors of McGuffey School District*, 839 A.2d 1005 (Pa. 2003) (upholding suspension without pay of school district superintendent in instance of serious charges of misconduct); *Kaplan*, 130 A.2d at 676 (permitting suspension without pay for a teacher pending dismissal); *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 592 A.2d 779, 783 (Pa. Cmwlth. 1991) (holding that a suspension without pay is not a *de facto* termination). In *Kaplan*, the Supreme Court stated that to "allow compensation to a teacher who deliberately breaks the moral law which makes him unfit to teach[ ] would result in an absurd and unreasonable interpretation of the act." 130 A.2d at 680 (internal citations omitted).

> \* \* \* \*

> The Acting Secretary concluded that "[b]ecause [Prieto's] conduct was potentially harmful to the safety of children, the

20

> [School] District had the right to suspend [Prieto] without pay pending a final decision on the recommendation to terminate his employment."

*Prieto*, slip op. at 7-8 (citations omitted) (emphasis in original).

Because Prieto's suspension was a disciplinary action taken by the Board to keep the School District's children safe, we concluded that his suspension without pay was within the constraints of due process.

Here, as in *Prieto*, Petitioner was accused of serious misconduct stemming from the December 6, 2019 incident. Addressing whether a suspended teacher is entitled to salary for the period between suspension and dismissal, the Supreme Court stated in *Kaplan*:

> In our view it is not an incident of such tenure that a teacher must be given active employment pending the conclusion of dismissal proceeding against him, or paid his full salary when it is determined upon hearing held that cause for removal existed. . . . **The welfare of the children is the paramount consideration**. It follows from the fact that the authorities are not required to give active employment to a teacher pending his removal hearing, that, when his removal is subsequently ordered, he is not entitled to receive salary for the period during which he has not taught. The law does not contemplate that public funds shall be expended where no services are performed, and where not only is there no duty to accept services tendered, but the welfare of the children may require that they be dispensed with until a hearing can be held.

*Kaplan*, 130 A.2d at 676 (quoting *Gentner v. Board of Education of Los Angeles*, 25 P.2d 824, 825 (Cal. 1933)) (emphasis in original).

Here, the School District found that Petitioner exhibited a loss of self-control that was extreme, violent and severe, Petitioner choked a student until he was unable to breath, and assaulted several other students who freed the student from

21

Petitioner's grasp. (S.R.R. at 154b-55b.) Petitioner had previously been warned and suspended for inappropriate physical contact with students in the past. Such facts led to the conclusion that a very real potential of harm existed. Accordingly, we agree with the Acting Secretary that a suspension without pay was permissible under established case law.

## 4. Lack of Substantial Evidence

Turning next to the merits, Petitioner argues that the Acting Secretary erred in finding that his conduct constituted intemperance under the School Code. He insists that he "did not choke the student." (Petitioner's Br. at 29.) He maintains that the facts show that he was assaulted by an unruly student who initiated the melee by pushing Petitioner and grabbing him by the neck. He avers that other students joined in and punched him. He submits that all his actions were defensive in nature. We find Petitioner's argument to be without merit.

In essence, Petitioner is requesting this Court to reweigh the evidence, make different findings, and make credibility determinations based upon his version of the incident. However, such would be in violation of our standard of review as well as clearly against the weight of the evidence. In a case involving the dismissal of a professional employee of a school district, as here, the Acting Secretary is "the ultimate factfinder" with the "power to determine the credibility of witnesses, the weight of their testimony[,] and the inferences to be drawn therefrom." *Belasco v. Board of Public Education of the School District of Pittsburgh*, 510 A.2d 337, 342 (Pa. 1986) (quoting *Grant v. Board of School Directors of Centennial School District*, 403 A.2d 157, 159 (Pa. Cmwlth. 1979)).

Section 1122 of the School Code provides:

22

The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe shall be immorality; incompetency; unsatisfactory teaching performance based on two (2) consecutive ratings of the employe's teaching performance that are to include classroom observations, not less than four (4) months apart, in which the employe's teaching performance is rated as unsatisfactory; intemperance; cruelty; persistent negligence in the performance of duties; wilful neglect of duties . . . persistent and wilful violation of or failure to comply with school laws of this Commonwealth, including official directives and established policy of the board of directors; on the part of the professional employe . . . .

24 P.S. § 11-1122(a).

It is the School District's burden to prove that a professional employee committed one or more of the statutorily enumerated acts. *Foderaro v. School District of Philadelphia*, 531 A.2d 570, 571 (Pa. Cmwlth. 1987). The School District charged Petitioner with "intemperance, cruelty, willful neglect of duties[,] and persistent and willful violation of or failure to comply with school laws of this Commonwealth, including official directives and established policy of the board of directors" under Section 1122 of the School Code. (S.R.R. at 128b-30b.)

Notably, intemperance is not defined in the School Code. Nevertheless, this Court has explained that intemperance is a loss of self-control, which may be inferred from the use of excessive force. *McFerren v. Farrell Area School District*, 993 A.2d 344 (Pa. Cmwlth. 2010).

The Acting Secretary concluded that the School District met its burden of proof because there was sufficient support in the record for the allegation that Petitioner's actions constituted intemperance and cruelty justifying his termination under the School Code. (Acting Secretary's Opinion at 14; R.R. at 274a.) Although Petitioner continues to reargue the facts surrounding the December 6, 2019 incident,

23

this is of no moment as the Acting Secretary did not find his testimony credible. As stated by the Acting Secretary, he reviewed the testimony and concluded:

> I find [Petitioner] not credible in all respects regarding his description of the incidents that lead to his dismissal and the procedure used to terminate his employment. To the extent that [Petitioner's] testimony is contradicted by students' testimony at the hearing, I find the students' statements credible.

*Id.* at 13; R.R. at 273a.

Upon review of the record and the Acting Secretary's findings, we find there was ample evidence to support the conclusion that Petitioner's conduct exhibited a loss of self-control or excessive use of force. Twenty-two witnesses testified that Petitioner choked a student, preventing him from breathing properly, and hit other students. Even the substitute teacher in the classroom stated that Petitioner had a student in a "neck hold." That student had injuries around his neck consistent with being choked. Photographs established that another student had scratches on his neck. Because the Acting Secretary's findings of fact are supported by substantial evidence, we must accept those findings on appeal.

## IV. CONCLUSION

For the foregoing reasons, we find the Acting Secretary's determination to be based on substantial evidence that supports the necessary factual findings. Because we do not detect any error of law or constitutional violation in the School District's termination proceedings, we affirm the Acting Secretary's June 16, 2022 Order.

_____
PATRICIA A. McCULLOUGH, Judge

24

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Slater,                  :
         Petitioner      :
                     :  No. 725 C.D. 2022
      v.              :
                     :
The School District of Philadelphia  :
(Department of Education),      :
         Respondent    :

***ORDER***

AND NOW, this 5th day of February, 2024, the Order and Opinion of the Acting Secretary of Education, Eric Hagerty, dated June 16, 2022, is hereby AFFIRMED.

_____

PATRICIA A. McCULLOUGH, Judge